## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Civil Action No. _____

| | |
|---|---|
| JAMES E. McDONOUGH, | ) |
| VANESSA LYNN McDONOUGH, | ) |
| | ) |
| **Plaintiffs,** | ) |
| v. | ) |
| | ) |
| THE CITY OF HOMESTEAD, Florida | ) |
| GEORGE GRETSAS, | ) |
| ALEXANDER ROLLE, | ) |
| TOM MEAD, | ) |
| RICKY RIVERA, | ) |
| **Defendants.** | ) |
| _____/ | |

## AMENDED COMPLAINT

Plaintiffs, JAMES E. McDONOUGH ("JMcDonough"), and VANESSA L. McDONOUGH ("VMcDonough"), sue Defendants, as follows:

1.      This is an action to recover compensatory damages in excess of the jurisdictional limit of this Court for violations of 42 U.S.C. §1983 *et seq.* against Defendants for deprivation of rights, privileges and immunities secured by the federal and state Constitutions as well as for supplemental claims.

## JURISDICTION AND VENUE

2.      The City of Homestead, former City Manager George Gretsas, Police Chief Alexander Rolle, and Homestead Detectives Ricky Rivera and Tom Mead, were all part of a continuing conspiracy and/or tort to violate Plaintiffs' civil rights, as alleged in detail below.

3.      Through an unlikely turn of events in the Summer of 2020, proof of the violations was found on flash-drives left in the office of George Gretsas when he was fired from a subsequent

Case No _____

job in the City of Delray Beach in Palm Beach County.  On the flash-drives, City Manager Gretsas had maintained Dossiers on Plaintiffs with false, defamatory, and/or illegally obtained information concerning Plaintiffs, which he strategically deployed and disclosed to third parties.  The Dossiers and their contents, themselves public records, led the way to further public records requests, which ultimately brought to light the extent of the deprivations of Plaintiffs' rights, privileges and immunities secured by the U.S. Constitution and Federal law, all under color of state law.

4.       The said Dossiers and their contents became public records, as they were created to perpetuate, communicate, or formalize knowledge within the scope of Defendant Gretsas' employment by the City.  Creation and placement of documents in the public records amounts to publication of the said documents.  Moreover, numerous portions of the said Dossiers containing private and/or false information, including document(s) concerning Plaintiffs, were later strategically disclosed and published by Defendant Gretsas within the scope of his employment by the City.

5.       These deprivations and violations of law, which are described in greater detail below, have been part of an ongoing pattern, and custom or policy in the City of Homestead until at least December 2019, and were only discovered in their full extent in 2020, as also described below.  The said custom or policy caused the damages alleged herein.

6.       This Court has jurisdiction over the subject matter and the persons in this action pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 (violation of Civil Rights); 28 U.S.C. § 1331 (civil actions arising under the Constitution, laws, or treaties of the United States); 18 U.S.C. §2724 (Drivers Privacy Protection Act) and 28 U.S.C. §1367(a) (supplemental jurisdiction); and the First and Fourteenth Amendments to the United States Constitution.

7.       Venue in this Court is proper under 28 U.S.C. § 1391.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Case No _____

## INTRODUCTION

8.      Defendant George Gretsas was the City of Homestead City Manager from November 22, 2010 to January 3, 2020.  He misused the authority of the state to illegally gather, write up, maintain, and distribute private and/or false information for a number of individuals for whom he maintained City Dossiers, including Plaintiffs.

9.      Homestead City Manager Gretsas used City resources without public purpose, including police detectives, to gather the information about Plaintiffs in the Dossiers, and disseminated the illegally gathered information strategically to damage Plaintiffs when advantageous to Gretsas and/or some of his co-defendants.

10.     The City of Homestead, by and through its manager, police chief, the mayor at the time, and some members of the City Council, knew of this practice and policy, and acquiesced to and/or ratified such unlawful behavior through its final policy makers. All Defendants at all times acted under color of state law.

11.     Additional individuals and entities thus became aware of some of the illegally gathered and maintained Dossiers, and may have wittingly or unwittingly accepted and enabled the Defendants' conduct. Plaintiffs reserve their right to amend these pleadings if evidence is found in discovery that any of such individuals actively participated in the conduct leading to this action, or turn out to have violated their legal duties to properly maintain public records.

12.     The willful and wanton violations of the Plaintiffs' legal rights under color of state law shock the conscience, requiring compensatory and/or punitive damages against those participating, as permitted by law.

CLAUDIO RIEDI, P.A.

1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Case No _____

13.     Defendants Gretsas and Rolle had supervisory liability in that they were authorized decision-makers who either ordered the constitutional violations alleged below or were aware of them and countenanced them, and thus proximately caused Plaintiffs' damages.

14.     Upon information and belief, Defendants Gretsas and Rolle directed employees and agents of the City of Homestead to perpetrate the illegal actions set forth below.  In the alternative, Defendant Gretsas and Rolle failed to intervene and to stop the known unlawful actions of their subordinates.

15.     Defendants Gretsas' and Rolle's unlawful conduct and failure to stop such unlawful conduct in their supervisory capacities caused the violation of Plaintiffs' clearly established constitutional rights of which a reasonable person would have known, all as more fully set forth below. A reasonable person in the situation Defendants confronted would have known that the conduct set forth below was unlawful.

**THE PLAINTIFFS**

16.     Plaintiff JMcDonough was at all times material to the allegations a citizen and resident of Miami-Dade County, Florida. He holds a doctorate in Chemistry, and is a patent examiner for the U.S. Department of Commerce.

17.     Plaintiff JMcDonough is a private citizen who blogs about city business and speaks out at city council meetings, and in doing so has made enemies in police and political circles, and as a result has suffered continued and brutal retaliation.

18.     Plaintiff VMcDonough was at all times material to the allegations a citizen and resident of Miami-Dade County, Florida. She is married to JMcDonough.

19.     Plaintiffs in this action have separate and distinct claims, but united in a single suit for convenience and economy.

4

Case No _____

## THE DEFENDANTS

20.     Defendant City of Homestead, Florida, is a municipality in Miami-Dade, Florida. The City of Homestead is and was a "person" as envisioned by 42 U.S.C. §1983.  At all times, the City of Homestead acted toward Plaintiffs under color of state law.

21.     Defendant, George Gretsas, was at times material City Manager of the City of Homestead.  He was the chief executive officer of the City of Homestead, having ultimate and final policy-making authority and power over all personnel decisions, public records policy, and over policing policy.  George Gretsas acted at all times towards Plaintiffs under color of state law. Under Homestead's Charter, the City Manager is appointed by, and serves at the pleasure, of the City Council and the Mayor of Homestead.

22.     Defendant Alexander Rolle at all times material has been the police chief of the City of Homestead.  As such, he was the policy maker for the daily policing activities of the officers and support staff of the City of Homestead Police, and was aware of and approved of violations of legal rights of the Plaintiffs.  He directed that the violations occur, authorized the violations, hid violations, and/or agreed to his subordinates' decisions to engage in the violations and/or subsequent cover ups. He acted at all times towards Plaintiffs under color of state law. Defendant Rolle is appointed by, and subordinate to, the Homestead City Manager.

23.     Defendants Mead and Rivera at all times material were police detectives with the City of Homestead. Within the scope of their employment they illegally investigated Plaintiffs outside of any approved police investigation and violated Plaintiffs' rights in other ways, all as more fully set forth below.  In doing so, they acted under color of state law.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Case No _____

24.     The genesis of the Plaintiffs' presence in a Gretsas' Dossier was in October 2012, when Plaintiff JMcDonough had a verbal altercation with a Homestead Police Officer who had operated his police vehicle recklessly in Plaintiffs' neighborhood.

25.     In January and February 2013, Plaintiff JMcDonough attempted to file an Internal Affairs (hereafter "IA") complaint against the officer, leading to a contentious relationship between Homestead's government, police, and Plaintiffs ever since.

26.     In retaliation, Homestead ordered its police officer to file false criminal charges and obtain a stalking injunction against JMcDonough, which he did.

27.     A series of altercations between City representatives and Plaintiff JMcDonough ensued over the years, which eventually led to numerous illegal actions by Homestead Police and government against Plaintiff JMcDonough and eventually even against VMcDonough.

28.     In February 2014, after the false criminal charges against Plaintiff JMcDonough were dropped, he met with Defendant Rolle to voice his complaint.  However, Defendant Rolle refused to allow Plaintiff JMcDonough to file a complaint about this long-term abuse, and later destroyed or concealed the evidence of police misconduct Plaintiff JMcDonough had provided him. Additionally, Rolle promised JMcDonough that he would suffer no more retaliation.

29.     Defendant Rolle then instructed his police department to investigate Plaintiff JMcDonough instead.

30.     In August 2014, local media published an article about JMcDonough's interactions with Homestead Police, which was critical of the Homestead Police Department and its leadership.

31.     In response, the officer was again ordered to file, on information and belief with Defendant Rolle's knowledge and approval, false criminal charges against JMcDonough, and

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Case No _____

obtained another temporary injunction against JMcDonough. Chief Rolle was again made aware of the retaliation and refused to take corrective actions.

32.    After this second injunction against him was also dismissed, Plaintiff JMcDonough himself wrote critically about the officer on the Homestead Forum of the police blog, "LEOaffairs.com." In response the officer obtained a third injunction against him for stalking.

33.    Around the same time, one or more anonymous persons (upon information and belief homestead police officers) began to defame Plaintiff JMcDonough and his wife, Plaintiff VMcDonough on the LEOaffairs.com blog.

34.    The disparaging and defamatory comments were made not only on the Homestead PD and Miami-Dade PD forums, but also on forums all across the State of Florida. The online defamation included false claims that Plaintiff JMcDonough was thrown in a mental institution because he can't handle that his wife sleeps with cops, that Homestead officers recorded it all, that Plaintiff JMcDonough is paranoid when police drives past his house, and some very sordid further allegations that should not appear in a public court document.

35.    Defendant Rolle refused to allow Homestead Police to investigate a resulting complaint filed by Plaintiff VMcDonough over the online defamation and harassment. VMcDonough also provided copies of that complaint when speaking at a council meeting.

36.    Defendant Rolle falsely stated in May 2015 that both McDonoughs were "crazy."

37.    In January 2015, Defendant City of Homestead began to block JMcDonough from speaking during the public comment section of the Council meetings. Homestead also censored JMcDonough's postings on City social media pages, and officials refused to meet with him. Thus, the combined actions of the City of Homestead, through its agents, left open no reasonable

CLAUDIO RIEDI, P.A.

1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Case No _____

channels of communication by which JMcDonough could petition Homestead for redress of grievances, free of retaliation and/or censorship.

38.     In July 2016, Plaintiff JMcDonough was again blocked from finishing his public comments during a Council meeting, and escorted from the Council Chambers after criticizing Chief Rolle and others for misconduct in a peaceful but outspoken manner.

39.     On August 23, 2016, Plaintiff JMcDonough published an article online critical of his expulsion from the council meeting the month before.

40.     On August 24, 2016, there was a meeting in Manager Gretsas' office, including Defendant Gretsas, Mayor Porter, Defendant Rolle, Col. Scott Kennedy, Sgt. Garland Wright, City Attorney Matthew Pearl, and possibly others. The participants unanimously agreed, in alleged consultation with the Miami-Dade State Attorney's Office, to "trespass" Plaintiff McDonough from City Hall in retaliation for his comments the month before, all without notice or opportunity to be heard for Plaintiff JMcDonough.

41.     Thus, in the evening of August 24, 2016, when Plaintiff JMcDonough attempted to attend the council meeting, he was escorted off the premises and later arrested and jailed, under false pretenses.  Later, after the state attorney was shown video footage of the incident and arrest, all charges against Plaintiff JMcDonough were dropped.

42.     Homestead police staked out JMcDonough's house, and then arrested him on September 1, 2016, for allegedly "cyber-stalking" and "witness tampering" a Homestead police officer.  Again, the State Attorney found Homestead's claims baseless, and declined to take action on the claims.  The same day, the same police officer alleging stalking and tampering filed a stalking injunction against JMcDonough, which was later dismissed on First Amendment grounds.

CLAUDIO RIEDI, P.A.

1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Case No _____

43.     Homestead police officers told the Miami-Dade State Attorney's Office, and on information and belief other in law enforcement, that Plaintiff JMcDonough was a "sovereign citizen," which is short-hand for a domestic terrorist.

44.     Over the years Plaintiff JMcDonough has been falsely arrested three times, two of which were felony arrests, for exercising his free speech rights to criticize Homestead and/or for trying to file a complaint.  McDonough has also suffered four frivolous (i.e., dismissed) stalking injunctions, as well as myriad other known or possibly unknown attempts to have him arrested for other felonies and misdemeanors by officers of the Homestead Police Department or city employees in collusion with the department.

45.     Additionally, both Plaintiff JMcDonough and VMcDonough have suffered continuing harassment and defamation at the hands of Homestead police.  Plaintiff JMcDonough was subjected to continual abuse and intimidation against exercising his constitutional rights.

46.     Many of the allegations in paragraphs 30 to 45 are the subject of separate legal actions by Plaintiffs, and are set forth here to provide the necessary background and context to explain Defendants' actionable conduct set forth below. They demonstrate a policy or pattern on the part of Homestead and Homestead police, as well as ratification of unlawful behavior.

47.     After Plaintiff JMcDonough's arrests in 2016, Homestead police officers publicly called Plaintiff JMcDonough a "sovereign citizen," which is short-hand for a domestic terrorist.

48.     Detective Mata then requested access to JMcDonough's IP Address and subscriber information from the State Attorney's Cyber Crime Division, and thus obtained, without probable cause while making  false and/or misleading representations, Plaintiff JMcDonough's private information.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

49.     In a public records request, Plaintiff JMcDonough later obtained transcripts of an executive session of the City Council that had taken place on May 9, 2017, where Mayor Porter stated that Plaintiff JMcDonough was a bad animal and poisonous, and a bully, and the only way you deal with a bully is to stand up and punch them in the nose.  In another executive session on March 2, 2017, with the transcript later discovered, Mayor Porter asked the attendees if there is any way to "eliminate" Plaintiff JMcDonough.

50.     At the September 2019 council meeting, Plaintiff JMcDonough again made public comments, when he was interrupted part-way through by comments from Sergeant Charles (Chip) Becker, who called him "crazy."  Sergeant Becker was on duty at the time and thus spoke within the scope of his employment.  Chief Rolle was also present and witnessed the action, and refused to intervene. In the City Manager's section of the same meeting, Defendant Gretsas thanked Sergeant Becker for his comments referencing JMcDonough.

51.     On June 7, 2020, former Homestead councilman Jimmie Williams advised McDonough that he had learned that Defendants Gretsas and Rolle had assembled a Dossier on him (Plaintiff JMcDonough), and had shown the Dossier to Williams and other members of the City Council.

52.     Defendants Gretsas and Rolle had also falsely stated, according to former councilman Jimmie Williams, that Plaintiff JMcDonough had twice been "Baker acted," that he was a bomb maker, and was a menace to society who needed to be "removed."

53.     Jimmie Williams also stated that Gretsas had a "war room" inside City Hall with pictures and documents of perceived enemies, including Plaintiff JMcDonough, but also Roy S. Shiver, and William Rea.

10

Case No _____

54.     Among the public records discovered on the flash drives found in Gretsas office in Delray Beach in 2020 were references to Defendants Mead and Rivera contacting the employer of Plaintiff JMcDonough and communicating defamatory falsehoods and/or misrepresentations to the latter, which was confirmed by emails obtained in targeted public records requests after discovery of the flash drives.

55.     The said emails are between City representatives and Plaintiff JMcDonough's employer, the U.S. Department of Commerce, and specifically to a Special Agent working for the Office of Inspector General (OIG).  Detectives Mead and/or Rivera wrote to the Special Agent numerous times and falsely suggested that Plaintiff JMcDonough was involved in illegal conduct, at a level that his employer needed to be aware so they could take appropriate disciplinary action against him. This correspondence was imitated on September 1, 2016, by Mead.  Rivera then took over and continued the correspondence with the Special Agent for well over a year.

56.     The City and its representatives obtained documents from Plaintiff JMcDonough's work computer through making false and misleading statements to the Special Agent, as well as through deliberate omissions of material fact(s).

57.     The said documents appear in JMcDonough's Dossier on Defendant's Gretsas' jump drives, along with comments stating that McDonough was well versed in chemicals known to be hazardous and explosive.

58.     The information from said documents related to JMcDonough's chemical patent review work for the U.S. Department of Commerce, were used by City representatives to defame Plaintiff JMcDonough as a "bomb maker."

11

Case No _____

59.     Also discovered on the flash drives was a reference to City Clerk Elizabeth Sewell seeking to have Plaintiff JMcDonough arrested for questioning an exaggerated invoice presented by Defendant Homestead for a public records request by JMcDonough. She had also filed her Complaint against Plaintiff McDonough on September 1, 2016.

60.     Information on the flash drives thus led to targeted public records requests.

61.     Also on the flash drives was Plaintiff JMcDonough's private information, including social security and driver's license numbers.  Such private information was not redacted in the City of Homestead public records, and wasfound in the possession of Defendant Gretsas.

62.     Also on the flash drives is a separate Dossier on Plaintiff VMcDonough, with background information, all of her residences, criminal history of hers (none) and of her family members, her complete unredacted social security and drivers license numbers, date and state of birth, family members and more, all on 105 pages of public records.  This information was also improperly in the possession of Defendant Gretsas.

63.     Though police resources were used to gather and disseminate the private information of the Plaintiffs, there is no official investigation/incident/offense/police report number against either Plaintiff JMcDonough or VMcDonough.


## COUNT I
## VIOLATION OF CIVIL RIGHTS -- JMcDONOUGH
## 42 U.S.C. §1983

64.     Plaintiff JMcDonough realleges and reavers paragraphs 1 through 63.

65.     This is an action by Plaintiff JMcDonough against each of the City of Homestead, George Gretsas, Police Chief Alexander Rolle, Detective Rivera, and Detective Mead, as specified below, to redress the deprivation, under color of state law, statute, custom or usage, of rights,

CLAUDIO RIEDI, P.A.

1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Case No _____

privileges and immunities secured to Plaintiffs by the Constitution and the laws of the United States. The said violations were ongoing and continued until 2020.

66.     Each of the foregoing Defendants, through their own actions set forth above, violated the US Constitution. Each of these Defendants either personally participated in the constitutional violations,  caused the constitutional violations to occur, or ratified them.

67.     The City, acting through its manager and/or police chief, had a custom or policy that constituted and evinced deliberate indifference to Plaintiff JMcDonough's constitutional rights, and said policy caused damages to Plaintiff JMcDonough.

68.     The said policy consisted of investigating Plaintiff JMcDonough through use of governmental resources without probable cause, and to use and communicate to the public the improperly gathered information to harm Plaintiff's person and reputation.

69.     The said policy further consisted of harassing and arresting Plaintiff JMcDonough, and of City representatives filing numerous unwarranted injunction proceedings and police reports against Plaintiff J.McDonough, all in an effort to intimidate him and to prevent him from exercising his constitutional rights.

70.     Defendants' custom and policy is further evidenced by similar violations of constitutional rights with regards to Roy S. Shiver, Ednamarie Hernandez, and William Rea, which are more fully alleged in the original Complaint in this matter and in separate legal actions brought by Shiver, Hernandez and Rea against various Defendants at this time.

71.     The City of Homestead's custom, policy and pattern of constitutional violations was the driving force behind Plaintiff  JMcDonough's injuries alleged below.

72.     Plaintiff JMcDonough enjoys the following rights, privileges and immunities, created by the Fourteenth Amendment to the Constitution of the United States:

13

Case No _____

> No state shall make or enforce any law which shall abridge the
> privileges, or immunities of citizens of the United States; nor shall
> any State deprive any person of life, liberty, or property, without due
> process of law; nor deny to any person within its jurisdiction the
> equal protection of the laws.

Accordingly, any violations by state actors, such as the City of Homestead and the Defendants named herein, of Plaintiff JMcDonough's rights, privileges and immunities guaranteed by the U.S. Constitution, under color of law, are actionable.

73.     Plaintiff JMcDonough enjoys the following rights, privileges and immunities, created under the First Amendment to the Constitution of the United States:

> Congress shall make no law … abridging the freedom of speech or
> of the press, or the right of the people peaceably to assemble, and to
> petition the Government for a redress of grievances.

Plaintiff JMcDonough's First Amendment rights were violated by Defendants City of Homestead, George Gretsas, Police Chief Alexander Rolle, and Detectives Mead and Rivera, when they harassed Plaintiff JMcDonough and retaliated against him for his exercise of his First Amendment rights.

74.     The Defendants further violated Plaintiff JMcDonough's clearly established right to assemble, protest, and demonstrate peaceably, and to petition the Government for redress of grievances, when they prevented him from peaceably speaking on public property, i.e., before the City Commission of Homestead, on several occasions.

75.     Plaintiff JMcDonough's attempts to speak before the Homestead City Council, and in blogging online about civic matters in Homestead, constituted expressive activities protected by the First Amendment.

76.     Plaintiff JMcDonough in speaking out critically of police and local government officials and matters handled by them engaged in constitutionally protected conduct.

14

77.     Defendants prevented Plaintiff JMcDonough from speaking and blogging under threat of police enforcement and by actually arresting Plaintiff McDonough when he attempted to express himself peaceably.

78.     Defendants also violated Plaintiff JMcDonough's First Amendment rights by censoring his comments and or blocking his ability to make comments on Facebook pages owned and operated by City of Homestead and the Homestead Police Department.  Such censorship was content-based and viewpoint-based, and thus violated Plaintiff McDonough's First Amendment rights.

79.     Defendants violated Plaintiff JMcDonough's First Amendment rights by further retaliating against him for writing online on non-official public forums, and they even retaliated against him after he spoke with the media about his abusive treatment. Defendants have retaliated against Plaintiff JMcDonough for exercising his rights to speech, press, assembly, and/or petition in each and every public forum he could find that was available to him.

80.     The above demonstrates a willful, wanton, and continued pattern and practice on the part of Defendants to violate Plaintiff JMcDonough's First Amendment rights.

81.     Defendants even went so far as to have one of their officers defame McDonough as mentally unstable with a history of clinically diagnosed mental health problems, in court documents and to the Miami-Dade Police Department.

82.     Some of the Defendants defamed Plaintiff JMcDonough as a "sovereign citizen" in statements to the Miami-Dade County State Attorney's Office.

83.     City representatives defamed Plaintiff JMcDonough as "crazy" at council meetings and to other in public and private.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

84.     City representatives defamed Plaintiff JMcDonough as being repeatedly institutionalized, as a "bomb maker," and as a "menace to society" to public officials and (on information and belief) others as well.

85.     Defendants retaliated against JMcDonough's First Amendment rights for his continued speaking out against corruption and abuse within the City, by contacting his employer and creating the false impression that McDonough was under criminal investigation by the Homestead Police Department. This was done as both a ruse to gather information that could be later used to harm Plaintiff JMcDonough, and to attempt to have him suffer adverse employment actions up to and including termination.

86.     The online defamation included claims that Plaintiff JMcDonough had misappropriated and/or stolen government property. On information and belief, some Defendants encouraged other police officers to file complaints with the Department of Commerce against Plaintiff JMcDonough for his comments online.

87.     Plaintiff JMcDonough's speech concerned matters of public concern.

88.     Plaintiff's constitutionally protected conduct was a substantial or motivating factor for the adverse actions taken by the Defendants.

89.     The interest of Plaintiff JMcDonough as a citizen, in commenting on matters of public concern, outweighs the Defendants' interest in promoting the efficiency of the public services they perform.

90.     Defendants' adverse action caused Plaintiff JMcDonough to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity.

16

Case No _____

91.     Defendants Gretsas and Rolle gave the orders causing the abridgment of Plaintiff JMcDonough's First Amendment rights, and/or knowingly acquiesced to blatant and continued unlawful behavior of their subordinates, which was brought to their attention.

92.     Plaintiff JMcDonough enjoys the following rights, privileges and immunities, created under the Fourth Amendment to the Constitution of the United States:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated…but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

93.     Plaintiff JMcDonough's Fourth Amendment rights were violated by Defendants City of Homestead, George Gretsas, Police Chief Alexander Rolle, and Detectives Mead and Rivera, when they or their agents illegally, without probable cause or warrant, accessed Plaintiff's private information and computer records and retrieved and or retained passwords and security questions, and listed the same in Homestead public records.

94.     Plaintiff JMcDonough has a protectable, reasonable expectation of privacy in his home and in his personal affairs, including in his exercise of First Amendment rights. He did not authorize the search of his private confidential information by Defendants or agents of Defendants.

95,     Plaintiff JMcDonough had an expectation of privacy in the information illegitimately gathered by Defendants, an expectation that society is prepared to accept as reasonable.

96.     Homestead representatives without probable cause accessed databases and public records to which they did not have access outside of a legitimate government investigation, and thus did not obtain the information concerning Plaintiff JMcDonough through authorized channels.

17

Case No _____

97.    By conducting an investigation into Plaintiff's private affairs outside the bounds of a legitimate investigation and solely for purposes unrelated to legitimate police investigations, Defendants violated an interest of Plaintiff JMcDonough protected by the Fourth Amendment.

98.    Plaintiff JMcDonough was damaged as a result of Defendants' violation of his constitutional rights.

99.    Defendants' actions in violating Plaintiff's civil rights under color of state law were malicious and wanton.

WHEREFORE, Plaintiff JMcDonough prays that this Court will

    a.    Enter judgment for Plaintiff JMcDonough and against each Defendant named in this Count for compensatory, nominal and punitive damages;

    b.    Award Plaintiff JMcDonough the costs of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

    c.    Grant such other and further relief as is just.

### COUNT II
### VIOLATION OF CIVIL RIGHTS – VANESSA LYNN McDONOUGH
### 42 U.S.C. §1983

100.    Plaintiff VMcDonough realleges and reavers paragraphs 1 through 23, 27, 33, 35-36, and 58.

101.    This is an action by Plaintiff VMcDonough against the City of Homestead, George Gretsas, Police Chief Alexander Rolle, and Detectives Mead and Rivera, as specified below, to redress the deprivation, under color of state law, statute, custom or usage, of rights, privileges and immunities secured to Plaintiff VMcDonough by the Constitution and the laws of the United States. The said violations were ongoing and continued until 2020.

18

Case No _____

102.    Each of the foregoing Defendants, through their own actions set forth above, violated the US Constitution. Each of these Defendants either personally participated in the constitutional violations or caused the constitutional violations to occur, or ratified them.

103.    The City, acting through its manager and/or police chief, had a custom or policy that constituted and evinced deliberate indifference to Plaintiff VMcDonough's constitutional rights, and said policy caused damages to Plaintiff VMcDonough.

104.    The said policy consisted of investigating Plaintiff VMcDonough through use of governmental resources without probable cause, and to use and communicate to the public the improperly gathered information to harm Plaintiff's person and reputation.

105.    Defendants' custom and policy is further evidenced by similar violations of constitutional rights with regards to Roy S. Shiver, Ednamarie Harnandez, and Plaintiff VMcDonough, which are more fully alleged above or in separate legal actions brought by Shiver against various Defendants at this time.

106.    Defendant's custom, policy and pattern of constitutional violations was the driving force behind Plaintiff VMcDonough's injuries alleged below.

107.    Plaintiff VMcDonough enjoys the following rights, privileges and immunities, created by the Fourteenth Amendment to the Constitution of the United States:

> No state shall make or enforce any law which shall abridge the privileges, or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Accordingly, any violations by state actors, such as the City of Homestead and the Defendants named herein, of Plaintiff VMcDonough's rights, privileges and immunities guaranteed by the U.S. Constitution, under color of law, are actionable.

19

Case No _____

108.    Plaintiff VMcDonough enjoys the following rights, privileges and immunities, created under the First Amendment to the Constitution of the United States:

> Congress shall make no law … abridging the freedom of speech or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

109.    Plaintiff VMcDonough's First Amendment rights were violated when Plaintiff VMcDonough was first harassed and doxed online, upon information and belief by Homestead Police officers, and when Defendant Rolle refused to allow Homestead Police to investigate a resulting complaint filed by Plaintiff VMcDonough over the online defamation and harassment.

110.    Plaintiff VMcDonough's First Amendment rights were further violated when she was subjected to abuse and harassment for speaking up at council meetings, an in an effort to intimidate Plaintiff VMcDonough so as to abridge her exercise of First Amendment rights.

111.    Plaintiff VMcDonough's constitutionally protected conduct was a substantial or motivating factor in the adverse actions taken by the Defendants against her.

112.    Plaintiff VMcDonough's speech concerned matters of 'public concern.'

113.    The interest of Plaintiff VMcDonough as a citizen in commenting on matters of public concern outweighs the Defendants' interest in promoting the efficiency of the public services they perform.

114.    Defendants' adverse action caused Plaintiff VMcDonough to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that free speech activity; and

115.    Defendants' adverse action was motivated at least in part as a response to the exercise of the Plaintiff VMcDonough's constitutional rights.

20

Case No _____

116.     Plaintiff VMcDonough enjoys the following rights, privileges and immunities, created under the Fourth Amendment to the Constitution of the United States:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violates…but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

117.     Plaintiff's Fourth Amendment rights were violated by Defendants City of Homestead, George Gretsas, and representatives of the city, searched for private information of Plaintiff VMcDonough, all without probable cause or suspicion of illegal conduct by Plaintiff VMcDounough, and outside the bounds of any proper governmental investigation, and thereafter placed the fruit of such illegal search in the public records of the City of Homestead.

118.     Plaintiff VMcDonough was damaged as a result of Defendants' violation of his constitutional rights.

119.     Defendants' actions in violating Plaintiff VMcDonough's civil rights under color of state law were malicious and wanton.

WHEREFORE, Plaintiff VMcDonough prays that this Court will

    a.   Enter judgment for Plaintiff VMcDonough and against all Defendants named in this Count for compensatory, nominal and punitive damages;

    b.   Award Plaintiff VMcDonough' s the costs of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

    c.   Grant such other and further relief as is just.

21

Case No _____

## COUNT III
**VIOLATION OF DRIVERS PRIVACY PROTECTION ACT (Plaintiff JMcDonough)**
**18 U.S.C. §2721 et seq.**

120.    Plaintiff JMcDonough relleges and reavers paragraphs 1 through 23, and 61.

121.    This is an action by Plaintiff JMcDonough against Defendants City of Homestead, Gretsas, and Rivera for violation of Plaintiff JMcDonough's rights under the Drivers Privacy Protection Act, 18 U.S.C. §2721 et seq.

122.    This Court has jurisdiction to adjudicate this claim pursuant to 18 U.S.C. 2724.

123.    Defendants City of Homestead and Defendant Rivera knowingly obtained, disclosed and used personal information of Plaintiff JMcDonough from a motor vehicle record, for a purpose not permitted under this chapter.

124.    The Drivers Information Protection Act was violated by Defendants City of Homestead, Gretsas and Rivera, when one or more of them knowingly obtained, disclosed or used the personal information of Plaintiff from the DAVID/NCIC/FCIC motor vehicle record for a use not permitted and by making a false representation to obtain information concerning Plaintiff.

125.    Plaintiff JMcDonough was damaged as a result of Defendants' Actions.

WHEREFORE, Plaintiff JMcDonough prays that this Court will enter judgment for Plaintiff JMcDonough and against all Defendants named in this Count for actual damages, punitive damages, reasonable attorneys fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.

## COUNT III
**VIOLATION OF DRIVERS PRIVACY PROTECTION ACT (Plaintiff VMcDonouigh)**
**18 U.S.C. §2721 et seq.**

126.    Plaintiff VMcDonough relleges and reavers paragraphs 1 through 23, and 62.

22

Case No _____

127.     This is an action by Plaintiff VMcDonough against Defendants City of Homestead, Gretsas, and Rivera for violation of Plaintiff VMcDonough's rights under the Drivers Privacy Protection Act, 18 U.S.C. §2721 et seq. This Court has jurisdiction to adjudicate this claim pursuant to 18 U.S.C. 2724.

128.     Defendants City of Homestead and Rivera  knowingly obtained, disclosed and used personal information of Plaintiff VMcDonough from a motor vehicle record, for a purpose not permitted under this chapter.

129.     The Drivers Information Protection Act was violated by Defendants City of Homestead, Gretsas and Rivera, when one or more of them knowingly obtained, disclosed or used the personal information of Plaintiff from the DAVID/NCIC/FCIC motor vehicle record for a use not permitted and by making a false representation to obtain information concerning Plaintiff.

130.     Plaintiff VMcDonough was damaged as a result of Defendants' Actions.

WHEREFORE, Plaintiff VMcDonough prays that this Court will enter judgment for Plaintiff VMcDonough and against all Defendants named in this Count for actual damages, punitive damages, reasonable attorneys fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.

## COUNT IV:
## VIOLATION OF ART. I., SECTION 23, FLA. CONST.

131.     Plaintiffs J.McDonough and VMcDonough reallege and reaver paragraphs 1 through 23, and 45, 48, 53, and 59.

132.     This state law claim is asserted against Defendant City of Homestead and Defendant Gretsas under this Court's supplemental jurisdiction.

23

Case No _____

133.     Plaintiffs enjoy the rights, privileges and immunities, provided by Article I, Section 23 of the Florida Constitution (Every natural person has the right to be let alone and free from governmental intrusion onto the person's private life).

134.     Plaintiff JMcDonough's Article I, Section 23 rights were violated by Defendants City of Homestead, George Gretsas and/or their agents when they contacted Plaintiff JMcDonough's employer, and communicated negative information concerning Plaintiff JMcDonough to such employer, all in an effort to get him fired,  and when those Defendants and/or their agents investigated Plaintiff JMcDonough without probable cause or reasonable suspicion of criminal misconduct, and solely to harass him and retaliate against him for exercising his constitutional free speech rights.

135.     Plaintiff VMcDonough's Article I, Section 23 rights were violated by Defendants City of Homestead, George Gretsas and their agents investigated VMcDonough without probable cause or reasonable suspicion of criminal misconduct, and solely to harass her and retaliate against her for exercising her constitutional free speech rights.

136.     Plaintiffs were damaged as a result of Defendants' violation of their constitutional rights.

WHEREFORE, Plaintiffs pray that this Court will enter judgment for Plaintiffs and against the Defendants named in this Count.

## COUNT V:
## VIOLATION OF ART. I., SECTION 12, FLA. CONST.

137.     Plaintiffs J.McDonough and VMcDonough reallege and reaver paragraphs 1 through 23, 45, 53, 56-58, and 60.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Case No _____

138.    This state law claim is asserted against Defendants City of Homestead and George Gretsas under this Court's supplemental jurisdiction.

139.    Plaintiffs' rights, immunities and privileges under Article I, Section 12 of the Florida Constitution (the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means) were violated by Defendants City of Homestead and George Gretsas, and/or their agents when Plaintiffs' computers and persona, houses papers or effects were searched by agents of Defendants without probable cause or reasonable suspicion of improper conduct by Plaintiffs.

140.    Plaintiff JMcDonough's Article I, Section 12 rights were violated by Defendants City of Homestead, George Gretsas and/or their agents when those Defendants and/or their agents investigated and seized Plaintiff JMcDonough without probable cause or reasonable suspicion of criminal misconduct, and solely to harass him and retaliate against him for exercising his constitutional free speech rights.

141.    Plaintiff VMcDonough's Article I, Section 12 rights were violated by Defendants City of Homestead, George Gretsas and their agents when they investigated VMcDonough without probable cause or reasonable suspicion of criminal misconduct, and solely to harass her and retaliate against her for exercising her constitutional free speech rights.

142.    Plaintiffs were damaged as a result of Defendants' violations set forth in this Count.

WHEREFORE, Plaintiffs pray that this Court will enter judgment for Plaintiffs and against Defendants.

25

Case No _____

## COUNT VI:
## PUBLIC DISCLOSURE OF PRIVATE FACTS

143.    Plaintiffs reallege and reaver paragraphs 1 through 23, 45, and 57-58.

144.    This state law claim is asserted by Plaintiffs JMcDonough and VMcDonough against Defendant City of Homestead and Defendant Gretsas under this Court's supplemental jurisdiction.

145.    Plaintiffs enjoy the rights and protections of Florida common law against public disclosure of private facts.

146.    Plaintiffs' rights, immunities and privileges under Florida's common law prohibiting public disclosure of private facts were violated by Defendants City of Homestead and George Gretsas, when they collected, maintained in public records, and thus disclosed the aforementioned private and confidential facts of Plaintiff, including without limitation, documents from JMcDonough's chemical patent review work for the Department of Commerce for the United States Department of Commerce, JMcDonough's social security and driver's license numbers,, Plaintiff VMcDonough's history of residences, criminal history of hers and of her family members, her social security numbers and drivers' license numbers, date and state of birth, family members and more.

147.    The information of Plaintiffs was private when collected, but became a public record when placed on the public records of Homestead and/or flash drives of Defendant Gretsas.

148.    Plaintiffs had a reasonable expectation that said information remains private.

149.    Plaintiffs were damaged as a result of Defendants' violation of their constitutional rights.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Case No _____

WHEREFORE, Plaintiffs pray that this Court will enter judgment for Plaintiffs and against

Defendants.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues so triable.

Respectfully submitted,

CLAUDIO RIEDI, P.A.
Counsel for Plaintiffs James E. McDonough
and Vanessa  L. McDonough
1200 Brickell Avenue, Suite 507
Miami, Florida 33131
Telephone: 305.760.8544
Facsimile: 305.356.5720

By: /s/ *Claudio Riedi, Esq.*

CLAUDIO RIEDI, ESQ.
Florida Bar No. 984930
CriediPA@gmail.com

OF COUNSEL
DEXTER W. LEHTINEN, ESQ.
Florida Bar No. 265551
Email: dwlehtinen@aol.com

27