UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-21538-KMM

JAMES MCDONOUGH and
VANESSA MCDONOUGH,

    Plaintiffs,

v.

CITY OF HOMESTEAD, FLORIDA, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court on Defendant George Gretsas's Verified Motion for Attorney's Fees. (ECF No. 66). The matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, to take all necessary and proper action as required by law and/or to issue a Report and Recommendation on the Motion. (ECF No. 68). Plaintiffs James E. McDonough ("Mr. McDonough") and Vanessa Lynn McDonough ("Mrs. McDonough") filed a Response (ECF No. 69), to which Defendant filed a Reply (ECF No. 71). An Evidentiary Hearing on the Motion was held on August 4, 2023. With the benefit of oral argument and evidence admitted at the hearing, and upon consideration of the Motion, Response, Reply, and being otherwise duly advised in the premises, the undersigned respectfully **RECOMMENDS** that Defendant's Motion be **GRANTED, in part**, and **DENIED, in part**.

1

**I.     BACKGROUND**

This action's history begins with an earlier related action raising identical factual allegations by Mr. and Mrs. McDonough.  *See William Rea v. City of Homestead*, 1:21-cv-20488-KMM (S.D. Fla. Feb. 4, 2021).  In *Rea*, Plaintiffs Mr. and Mrs. McDonough were joined by three other plaintiffs; Defendants are the same for both suits.

Defendants moved to dismiss the complaint and additionally requested severance for failing to meet the requirements of permissive joinder.  Upon filing of Defendants' motions, the District Court, "[w]ithout expressing any views as to the Motions' merits," entered an order "afford[ing] Plaintiffs an opportunity to cure the purported pleading defects by granting Plaintiffs leave to file an amended complaint."  Plaintiffs Mr. and Mrs. McDonough responded by voluntarily dismissing their claims from that action and initiating the instant action.

On April 21, 2021, Plaintiffs filed the Amended Complaint upon initiating this action (ECF No. 1).  Plaintiffs alleged that Defendants had violated Plaintiffs' civil rights, proof of which was allegedly discovered on flash drives in Defendant George Gretsas's office, who was then the City's manager.  Plaintiffs alleged that on the flash drives, Gretsas maintained dossiers on Plaintiffs with false, defamatory, and/or illegally obtained information concerning Plaintiffs, which he strategically deployed and disclosed to third parties.

Plaintiffs brought forth seven causes of actions, both state and federal.[1]  Plaintiffs' federal claims, Counts I–IV, included § 1983 claims and claims for violation of the DPPA.  Plaintiffs' state claims, Counts V–VII, included state constitutional claims and a state common law claim.

---

[1] Violation of Civil Rights, 42 U.S.C. § 1983, by Mr. McDonough (Count I); Violation of Civil Rights, § 1983, by Mrs. McDonough (Count II); Violation of the Driver Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721 *et seq.*, by Mr. McDonough (Count III); Violation of the DPPA, §§ 2721 *et seq.*, by Mrs. McDonough (Count IV); Violation of Article I, Section 23, of the Florida Constitution (Count V); Violation of Article I, Section 12, of the Florida Constitution (Count VI); and Public Disclosure of Private Facts (Count VII).

Defendants again moved to dismiss on the basis that the Amended Complaint was a shotgun pleading, Plaintiffs' claims were barred by res judicata, and the Amended Complaint failed to state a claim upon which relief may be granted. The District Court granted Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. (ECF No. 44). The District Court held that Plaintiffs' federal claims were barred under the doctrine of res judicata. The Court also noted that Plaintiffs' § 1983 claims were impermissible shotgun pleadings. Plaintiffs' federal law claims were dismissed with prejudice. With only state law claims remaining, the District Court declined to exercise supplemental jurisdiction and dismissed those claims without prejudice. Plaintiffs then filed a motion to reconsider the District Court's Order, which was opposed by Defendants (ECF Nos. 46, 47) and ultimately denied. The Court's judgment on Defendants' Motion to Dismiss was affirmed on appeal. (ECF No. 75).

Defendants moved for a determination of entitlement to attorney's fees under 42 U.S.C. § 1988. The undersigned issued a Report and Recommendation on the matter, which the District Court subsequently adopted. The Court held that Defendants were entitled to recover reasonable attorney's fees incurred in defending against Plaintiffs' federal claims. This Court found that Defendants were the prevailing parties. In assessing the frivolity of the claim, the Court found that Plaintiffs failed to make out a *prima facie* case for their federal claims. The Court noted that it was clearly apparent that Plaintiffs' claims were barred by res judicata, which precluded Plaintiffs from establishing a *prima facie* case. The Court also noted that the Parties conceded that neither side made an offer to settle nor made any attempts to settle and the case was dismissed prior to trial. The Court further found that the claims did not warrant careful attention and review. As such, the Court found Plaintiffs' federal claims were frivolous. Regarding the state claims, the Court held that Defendants were not entitled to fees incurred in defending against Plaintiffs' state

claims because the District Court in declining to exercise supplemental jurisdiction declined to consider the merits of those claims.

Defendant Gretsas now moves for an entry of an award of reasonable attorney's fees incurred in this action and incurred in litigating attorney's fees.

## II.  DISCUSSION

Defendant Gretsas seeks an award of attorney's fees in the total amount of $27,670.65. Defendant seeks an award in the amount of $16,654.95 in defending against Plaintiffs' claims. Defendant additionally seeks $11,015.70 in attorney's fees incurred in prosecuting his Motion on his entitlement to fees and the instant Motion for an award of attorney's fees.

In assessing the reasonableness of a request for attorney's fees, courts in the Eleventh Circuit apply the "lodestar" method to calculate an objective estimate of the value of an attorney's services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Under the lodestar method, the value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 1350 n.2 (citing *Johnson*, 488 F.2d at 717–19).

The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303). Courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* at 428. When a request for attorney's fees is unreasonably high, courts may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut. *Bivins*, 548 F.3d at 1350; *see also Procaps S.A. v. Patheon Inc.*, No. 12-CV-24356, 2013 WL 6238647, at *17 (S.D. Fla. Dec. 3, 2013) (reducing a party's fee request with an across-the-board cut based upon billing inefficiencies). Although courts may apply either method, they cannot apply both. *Bivins*, 548 F.3d at 1351. Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.*

### A. Reasonable Hourly Rate

In computing the lodestar, the first step is to determine the reasonable hourly rate, defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The Supreme Court has explained that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). This Court is deemed an expert on the issue of hourly rates and may properly consider "its own knowledge and

experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1301).

In this case, Defendant Gretsas seeks an award of attorney's fees for time incurred by attorneys Gerald E. Greenberg, Brian Toth, Andrew Figueroa, and Andrew Fuller at a rate of $219.00. In applying the *Johnson* factors, Defendant asserts that all hours incurred were necessary and required to achieve the successful result at the motion-to-dismiss stage. Defendant argues that the issues presented in this litigation required a high level of skill and the ability to be able to quickly analyze and brief complex issues. Defendant represents that his attorneys have extensive experience in federal court and otherwise have substantial legal skill and expertise both in the area of civil rights and in First Amendment litigation. Defendant asserts that the hourly rate and attorney's fees sought by his attorneys are well below the rate and fees customarily charged. Defendant contends that the relief sought by Plaintiffs in this matter was significant and the results his attorneys obtained "were excellent." Defendant represents that his attorneys dedicated nearly 18 months to this litigation.

Plaintiffs do not object to Defendant's hourly rate. In responding to the *Johnson* factors, Plaintiffs assert that they generally agree with Defendant's analysis, but dispute some of the factual allegations made. Plaintiffs assert that they do not agree that all of the time and labor expended was required to achieve the successful result or that all of the hours expended were reasonable. Further, Plaintiffs do not agree that the issues briefed in this case were novel or difficult. Lastly, Plaintiffs disagree that Defendant Gretsas has provided evidentiary support to recover any fees.

In view of the factors from *Johnson v. Georgia Highway Express, Inc.*, the Court finds that the requested hourly rate is reasonable. The Court has considered the novelty and difficulty of the

questions at issue; the skill requisite to perform the legal service properly; the customary fee; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases. This Court has also drawn on its expertise on the issue of hourly rates. *Loranger*, 10 F.3d at 781.

Defendant requests an hourly rate of $219.00 for all attorneys involved in this matter. This fee request is significantly lower than what has been awarded in other § 1983 cases. *See Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1207 (N.D. Fla. 2019) (finding $900.00–$250.00 hourly rates for attorneys with 41–5 years of experience); *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, No. 15-60185-CIV, 2022 WL 18356156, at *4 (S.D. Fla. Oct. 21, 2022), *report and recommendation adopted*, No. 15-60185-CIV, 2022 WL 17728980 (S.D. Fla. Dec. 16, 2022) (awarding hourly rates of $375.00 for two attorneys with 16 and 22 years of experience, respectively; $450.00 for an attorney with 28 years of experience; and $500.00 for two attorneys with 36 years of experience); *Gartman v. Brady*, No. 2:18CV534-MHT, 2022 WL 4000349, at *6–8 (M.D. Ala. Sept. 1, 2022) (awarding a fee at an hourly rate of $500.00 for an attorney with over 30 years of litigation experience and substantive § 1983 experience). As such, the customary fee and awards in similar cases weigh in favor of finding the requested rate reasonable.

Regarding the experience, reputation, and ability of the attorneys, Gerald E. Greenberg, Esq. is a founding shareholder of Gelber Schachter & Greenberg, P.A. and graduated from Yale Law School in 2000. Mr. Greenberg has been licensed to practice law since 2001 and admitted to the Southern District of Florida Bar since 2006. Brian Toth, Esq. is a former partner of Gelber Schachter & Greenberg, P.A, who worked on the case before opening his own law firm. He graduated from University of Miami School of Law and has been a member of The Florida Bar since 2008. Andrew Figueroa, Esq. is an associate at Gelber Schachter & Greenberg, P.A. and

graduated from Florida International University College of Law in 2017. Mr. Figueroa has been a member of The Florida Bar since 2017. Andrew Fuller, Esq. is a former associate at Gelber Schachter & Greenberg, P.A., and graduated from University of Florida Law School. Mr. Fuller has been a member of The Florida Bar since 2020. As the attorneys have a range of 20 years to 3 years of licensed experience, the attorneys' experience weighs in favor of finding the requested rate reasonable.

And while Section 1983 cases are legally and factually complex and generally difficult to litigate, the legal and factual questions in this particular case were less so. The case was dismissed at the motion-to-dismiss stage on res judicata grounds. Plaintiffs represent there was no discovery in this matter before the adjudication of the motion to dismiss, and the record reflects that no other motions were filed before its adjudication.

But recognizing the successful result obtained at the motion-to-dismiss stage, noting the awards in other cases, considering counsel's experience, and drawing on the Court's own expertise on the issue of hourly rates, *see Loranger*, 10 F.3d at 781, the Court finds that an hourly rate of $219.00 is reasonable in this case.

**B.     Reasonable Number of Hours Worked**

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended in the litigation. The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel*." *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the

amount of fees to award. *Id.* at 428. Counsel must have reliable evidence to support hours that are claimed. *See Jean v. Nelson*, 863 F.2d 759, 772 (11th Cir. 1988). If the fee applicant fails to exercise the required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.*

Defendant seeks attorney's fees for 76.05 hours of work in the amount of $16,654.95 for defending against the federal frivolous claims as well as the state, non-frivolous claims as Defendant argues that the state and federal claims are inextricably intertwined. Defendant's fee request also includes fees incurred in the first action (*Rea*) before Plaintiffs severed their claims from that suit and refiled the instant action. In his Reply, Defendant additionally seeks 50.3 hours of work in the amount of $11,015.70 in attorney's fees in prosecuting his Motion on his entitlement to fees and the instant Motion for an award of attorney's fees.

In the alternative, Gretsas argues that if the Court finds that the frivolous and non-frivolous claims are not inextricably intertwined that Gretsas should be awarded 57.2% of his fees, the percentage he calculates as attributable to four frivolous claims out of seven total claims.

Plaintiffs argue, first, that Defendant should not be awarded any fees because Defendant failed to allocate which fees were incurred in defending against the frivolous claims versus the non-frivolous claims. Plaintiffs assert that Defendant's request in the alternative for a 57.2% cut of fees is improper, considering doing so would mean that not a single charge of fees would be incurred solely due to the frivolous claims. Second, Plaintiffs object to Defendant's entitlement to fees incurred in the *Rea* action because it was a separate lawsuit and Defendant should have moved for attorney's fees in that action. Finally, Plaintiffs argue that Defendant is not entitled to fees incurred in litigating attorney's fees because Defendant did not parse his fees incurred due to the frivolous and non-frivolous claims. Plaintiffs assert that, even if Defendant was entitled to fees

9

incurred in litigating the motions for attorney's fees, Defendant would only be entitled to fees incurred for moving for an entitlement to fees, not fees incurred in seeking the amount of fees awarded.

### 1. Fees Incurred for Frivolous and Non-frivolous Claims

Defendant Gretsas seeks an award of attorney's fees in the amount of $16,654.95 incurred in defending against the litigation, inclusive of fees incurred in defending against the frivolous and non-frivolous claims. Defendant argues that the total amount of his fees should be granted as the work conducted by his attorneys on the federal claims was inextricably intertwined with the work conducted on the state claims. Gretsas asserts that the frivolous and non-frivolous claims are inextricably intertwined because the facts underlying § 1983 claims were incorporated into the facts justifying relief under the state claims. As such, Gretsas should be entitled to an award of all his fees incurred in this action.

Plaintiffs argue that, because Gretsas is unable to separate the fees incurred on the frivolous claims versus the non-frivolous claims, Defendant has not met his burden of establishing entitlement to any award. And as such, Defendant's request for fees must be denied in its entirety.

Section 1988(b) provides in part that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Even though the statute does not distinguish between prevailing plaintiffs and prevailing defendants, the Supreme Court determined that two separate standards apply depending upon whether the plaintiffs or the defendants prevail. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416–17 (1978); *Fox v. Vice*, 563 U.S. 826, 836 (2011); *K.M. v. Sch. Bd. of Lee Cnty., Fla.*, No. 202-CV-40-FTM-29DNF, 2006 WL 2506960, at *1 (M.D. Fla. Aug. 9, 2006), *report and recommendation adopted*, No. 2:02-CV-40-FTM-29DNF, 2006 WL 2506673 (M.D. Fla. Aug. 28,

10

2006). Under Supreme Court precedent, a prevailing defendant may be awarded attorney's fees, at the discretion of the court, if the court finds that the plaintiff's lawsuit was frivolous, unreasonable, or without foundation. *Hughes v. Rowe*, 449 U.S. 5, 14–15 (1980); *Christiansburg*, 434 U.S. at 421; *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1188 (11th Cir. 1985); *Evans v. Monroe Cnty. Sheriff's Dept.*, 148 F. App'x. 902, 903 (11th Cir. 2005). Here, Defendant was found entitled to fees because Plaintiffs' federal claims were frivolous.

Upon finding a claim frivolous, a defendant is entitled to attorney's fees under § 1988 "incurred because of, but only because of, a frivolous claim." *Fox*, 563 U.S. at 836. "[I]f a frivolous claim occasioned the attorney's fees at issue, a court may decide that the defendant should not have to pay them. But if the defendant would have incurred those fees anyway, to defend against non-frivolous claims, then a court has no basis for transferring the expense to the plaintiff." *Id.* (emphasis omitted). "At the same time, the 'but-for' standard [courts] require may in some cases allow compensation to a defendant for attorney work relating to both frivolous and non-frivolous claims." *Id.* at 838. "[T]he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation." *Id.*

Defendant in his Motion applies the incorrect standard for compensation of non-frivolous claims to prevailing defendants under § 1988. The standard Defendant uses pertains to prevailing *plaintiffs* who may be entitled to fees incurred for non-compensable claims under § 1988 if the compensable and non-compensable claims are based on a "common core of fact or related legal theories." *Johnston v. Borders*, 36 F.4th 1254, 1282 (11th Cir. 2022) (alteration omitted). The Supreme Court in *Fox* noted that analyzing compensation for frivolous and non-frivolous claims based on the closeness of the claims "stands the appropriate analysis on its head" with respect to

11

prevailing *defendants*. *Fox*, 563 U.S. at 840. Indeed, the intertwined nature of the claims as argued by Defendant weighs in favor of denying Defendant's request of fees incurred in this action, due to the frivolous claims or otherwise.

However, the dispositive question in determining if Defendant is entitled to fees for the non-frivolous claims is whether Defendant's costs would have been incurred in the absence of the frivolous claims. *See Fox*, 563 U.S. at 836. Notwithstanding my previous recommendation that Defendant should be awarded his fees incurred in defense of the federal, but not state, claims, I am persuaded by the evidence adduced at the hearing in support of this Motion that, with minor exception, all of Gretsas's fees were incurred as a result of the frivolous claims, and would not have been otherwise incurred.

Beginning with the original Complaint filed in *William Rea v. The City of Homestead*, 1:21-cv-20488 (S.D. Fla. Feb. 4, 2021), Mr. and Mrs. McDonough's allegations were cast solely as raising § 1983 and § 1985 claims against Defendants. After voluntarily severing their claims, Plaintiffs filed the Amended Complaint in this case that states, "This is an action to recover compensatory damages in excess of the jurisdictional limit of this Court for violations of 42 U.S.C. §1983 *et seq.* against Defendants for deprivation of rights, privileges and immunities secured by the federal and state Constitutions as well as for supplemental claims." (ECF No. 1 at ¶ 1). At the hearing held on this Motion, Plaintiffs conceded that the facts from the original Complaint that related to Mr. and Mrs. McDonough in *Rea* were the same facts asserted in the Amended Complaint in this action.

Defendant has argued, convincingly, that the Amended Complaint takes the same facts that previously supported their federal claims in the *Rea* case and, in addition to repleading § 1983 claims, attempts to additionally advance a few supplemental claims grounded in state law—but

12

that this pleading strategy by Plaintiffs does not change what was always essentially a suit based on the federal constitutional violations.  The undersigned finds that an evaluation of the instant case supports a finding that Defendant is entitled to an award of all attorney's fees attributable to his defense against the Amended Complaint.  *See, e.g.*, *Nunez v. City of Pompano Beach*, No. 20-62626-CIV, 2021 WL 5213089, at *5 (S.D. Fla. Oct. 25, 2021), *report and recommendation adopted*, No. 20-62626-CIV, 2021 WL 5206086 (S.D. Fla. Nov. 9, 2021) (recommending award for all fees incurred in defense of frivolous § 1983 claims with pendant state claim not found explicitly to be frivolous, but found barred by sovereign immunity, and as such, was "readily apparent that all four claims against [defendant] were frivolous").  Accordingly, but for the frivolous, federal claims, Defendant's costs here would not have been incurred.

Mr. Greenberg's testimony at the hearing corroborated this conclusion with specific examples of the work performed and the manner in which he and his colleagues approached their research and response to the McDonough's claims.  Mr. Greenburg testified that they viewed the federal claims as predominant, and the majority of the time was spent responding to the federal claims due to their complexity.  He testified to Mr. Toth working on a lot of subcategories and subclaims within the § 1983 claims relating to the First, Fourth, and Fourteenth Amendment as an example of the complex nature of the § 1983 claims.  Mr. Greenburg testified that there was a lot to "unpack" with the § 1983 claims, which took a significant amount of time.  Additionally, Mr. Greensburg recalled spending the majority of his time speaking to his colleagues about the federal claims and researching and drafting responses to the federal claims.

Additionally, the Supreme Court noted in *Fox* that a defendant could be entitled to all fees incurred in a suit when "the frivolous claim enables removal of the case to federal court, which in turn drives up litigation expenses."  *Fox*, 563 U.S. at 837.  While this case was not removed to

federal court, the Court's jurisdiction over this action derives from Plaintiffs' federal, frivolous claims. Plaintiffs' choice of federal forum due to this Court's jurisdiction over the federal, frivolous claims caused "increased costs" in this case and further supports Defendant's entitlement to fees relating to both the frivolous and non-frivolous claims. *See id.*

Having reviewed the time entries at issue and with the benefit of hearing testimony, I find that Plaintiffs' frivolous federal claims were the but-for cause of defense counsel's time largely incurred in defending this action. At the hearing, Mr. Greenberg identified one task that was severable from work necessitated by defense of the frivolous claims: he testified that no less than 65% of the work performed in preparing the Motion to Dismiss was dedicated to the federal claims, and correspondingly, no more than 35% of attorney time was dedicated to litigating issues on the state law claims.[2] Mr. Greenburg credibly explained his recollection of his drafting and research efforts, a recollection that he testified was refreshed by his recent review of the Motion to Dismiss briefing, which was primarily devoted to the federal claims. Mr. Greenberg further testified that the legal research dedicated to the state claims was fairly limited by the number of cases available, as compared to the plethora of cases reviewed for the federal claims. He additionally testified that he remembered the majority of the discussions between him and his colleagues were about the § 1983 claims. In finding Mr. Greenburg's testimony credible, the undersigned finds that, in drafting the Motion to Dismiss, Defendant should only be entitled to 65% of the fees incurred during that time as it represents the fees incurred solely due to the frivolous claims.[3]

---

[2] By contrast, counsel's efforts to oppose Plaintiffs' motion for reconsideration were exclusively necessitated by Plaintiffs' continued pursuit of their federal claims, which were the subject of that motion.

[3] To be clear, the apportionment of time on the motion to dismiss is based on evidence, that is, Mr. Greenberg's credible testimony that a minimum of 65% of the time incurred by his firm in prosecution of the Motion to Dismiss was necessitated by the federal claims. I reject Defendant's suggestion to apportion fees on a basis derived from the percentage of claims litigated, which the Eleventh Circuit has characterized as an arbitrary metric. *See Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987) (quoting *Henlsey*, 461 U.S. at 435 n.11) ("[I]n *Hensley* the Supreme Court explicitly rejected a proportional reduction in the lodestar amount based simply on 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.'").

### 2.     The *Rea* Case

Defendant also requests fees incurred in the original action, *Rea*, which Defendant represents are included in his request for $16,654.95 in attorney's fees. Defendant further represents that Defendant applied a 40% reduction to his fees incurred in the first lawsuit as Plaintiffs in this case comprised two of the five plaintiffs in *Rea*. Defendant argues he is entitled to fees incurred in *Rea* because the work incurred in that case was necessary to secure the final result obtained in this litigation.

Plaintiffs argue that Defendant is not entitled to fees incurred in *Rea* as it was a separate proceeding. Plaintiffs assert that Defendant did not seek fees in the related action when it was timely and cannot seek to recoup those fees here. Plaintiffs additionally object to Defendant's request for 40% of fees incurred in that action as illogical and unreasonable; Plaintiffs argue that the law does not permit such rough apportionment but if it did, Mr. and Mrs. McDonough would collectively represent a single plaintiff, or one-fourth of the original plaintiffs from *Rea*, because their claims traveled together.

In civil rights litigation, parties may be entitled to fees incurred in a separate proceeding, such as a prior administrative or state proceeding, where the work undertaken was "useful and of a type ordinarily necessary to advance the civil rights litigation." *See Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985); *see Bartholomew v. Watson*, 665 F.2d 910, 914 (9th Cir. 1982) (finding work in a related state proceeding an "essential step" in presenting the plaintiff's § 1983 claim, and thus compensable); *Stathos v. Bowden*, 728 F.2d 15, 22 (1st Cir. 1984) ("The issues in the state suit were virtually the same as in the federal case. Defendants appeared to have filed it in order to preempt the federal action. And plaintiffs were forced to defend it lest they lose

15

their § 1983 claim in the federal courts through collateral estoppel.  Defense of the state court action was a necessary part of plaintiffs' efforts to achieve their § 1983 goal.").

Here, counsel's efforts in the *Rea* action were not only useful and necessary to advance this action, but the relatedness of the two lawsuits cannot be overstated.  The complaint in *Rea* was considered the original Complaint for this action by Plaintiffs and the appellate court alike.  Plaintiffs appealed the District Court's dismissal of the federal claims with prejudice, arguing that they should have received an opportunity to cure the deficiencies found in the Amended Complaint.  The Eleventh Circuit in affirming the District Court's dismissal noted that Plaintiffs had notice of the pleading deficiencies by the District Court's Order in *Rea*, which afforded "Plaintiffs an opportunity to cure the purported pleading defects by granting Plaintiffs leave to file an amended complaint."  Following the District Court's Order, Mr. and Mrs. McDonough severed their claims and initiated this suit by filing the operative Complaint.  That it was an amendment of their first complaint is plain from the pleading itself, which Plaintiffs labeled as the "Amended Complaint."  (ECF No. 1).  The Eleventh Circuit noted that Plaintiffs' naming of the operative Complaint in this action as an Amended Complaint supported the finding that Plaintiffs were provided sufficient notice of their pleading deficiencies.

Moreover, I have examined the motion to dismiss counsel filed in *Rea* to determine its value in achieving the result herein.  As previously noted, the original Complaint advanced federal claims exclusively, and rested on the same facts alleged in the Amended Complaint here.  Unlike the motion to dismiss filed in this suit, which allocated some argument to the state supplemental claims, the motion to dismiss in *Rea* related solely to the federal claims that later give rise to the claims raised herein.  And while Plaintiffs argued that the work performed by counsel on that motion would have been required whether Mr. and Mrs. McDonough were part of the original suit

16

or if it was brought solely by the other three plaintiffs, in fact, the motion addresses the alleged deficiencies in the McDonough's claims. *See* Defendant George Gretsas's Motion to Dismiss and to Sever Complaint, *William Rea v. The City of Homestead*, 1:21-cv-20488 (S.D. Fla. Feb. 4, 2021), ECF No. 15 at 12–15. Defendant's efforts in *Rea* were useful and necessary to the outcome here, and would not have been incurred but for the frivolous, federal claims there alleged. Accordingly, I will include the time incurred in *Rea* in this recommendation.

Plaintiffs argue that Defendant should have sought fees in *Rea* when it was timely and cannot now seek to recoup those fees here. However, Plaintiffs' argument fails to appreciate that there was no final adjudication of Mr. and Mrs. McDonough's claims in *Rea* that would have triggered Defendant's ability to seek fees against them. While the plaintiff's case in *Rea* was ultimately dismissed with prejudice, this dismissal was not an adjudication of *Mr. and Mrs. McDonough's* claims and, as such, Defendant could not seek fees from Plaintiffs for their frivolous claims.

Additionally, Defendant in requesting fees for the first action applies a 40% reduction of his fees incurred because Plaintiffs in this case comprised two of the five plaintiffs in *Rea* originally. Plaintiffs dispute the propriety of this reduction. Defendant, however, does not explain why a 40% reduction of fees is necessary when "joint and several liability applies in § 1983 damages actions." *Wright v. Watson*, No. 4:15-CV-34, 2017 WL 4126981, at *2 (M.D. Ga. Sept. 18, 2017). Nonetheless, the Court is not permitted to award parties more than they request.

Accordingly, Defendant is entitled to the fees requested that were incurred in defending against the *Rea* action, which totals $6,491.16.

### 3. Fees-on-Fees

Defendant argues that he is entitled to compensation for fees incurred in prosecuting his Motion to Determine Entitlement to Attorney's Fees, and for fees incurred in prosecuting the instant Motion for an award of attorney's fees. Gretsas seeks $11,015.70 in attorney's fees incurred in prosecuting both Motions.

Plaintiffs argue that Defendant is not entitled to fees incurred seeking entitlement to attorney's fees because Defendant cannot parse which fees were incurred due to the federal or state claims. Plaintiffs assert that, even if Defendant was entitled to fees incurred in litigating the motions for attorney's fees, Defendant would only be entitled to fees incurred for moving for an entitlement to fees, not fees incurred in seeking the amount of fees awarded.

"It is well-settled that fees-on-fees are permitted under § 1988 even though Congress did not explicitly provide for fees-on-fees therein." *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 799 (11th Cir. 2003) (citing *Hernandez v. Kalinowski*, 146 F.3d 196, 200 (3d Cir. 1998); *Jonas v. Stack*, 758 F.2d 567, 568 (11th Cir. 1985)). "Like other courts, we have allowed parties to recover the cost of establishing their right to, and the amount of attorney's fees—the right to fees-on-fees." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010); *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980) ("[P]revailing plaintiffs under the Act are properly entitled to fee awards for time spent litigating their claim to fees."). As the undersigned found Defendant is entitled to recoup his attorney's fees for both frivolous and non-frivolous claims as detailed above, Defendant is entitled to fees-on-fees as well under § 1988.

Plaintiffs argue, in the alternative, that Defendant is only entitled to fees incurred litigating his entitlement to fees, but not for litigating the fee amount. Plaintiff advances *Ruderman ex rel. Schwartz v. Washington National Insurance Corp.*, 465 F. App'x 880, 882 (11th Cir. 2012), to

support his argument but fails to appreciate that *Ruderman* did not apply the same fee-shifting statute at issue here. Rather, the court in that insurance dispute shifted fees pursuant to Fla. Stat. § 627.428, and noted the Florida Supreme Court's holding that under that statute, "attorneys' fees incurred for litigating entitlement to fees are recoverable, but fees incurred for litigating the fee amount are not." *Id.* *Ruderman* is accordingly inapplicable here.

While Defendant is legally entitled to recoup his fees-on-fees, his Motion did not fully inform Plaintiffs of the amounts he now seeks, raised in his Reply. Rather, his Motion included invoices only through October 27, 2022. Plaintiffs' counsel objected at the hearing to the Court's consideration of evidence of bills that were not included in the Motion. In fairness to Plaintiffs, Defendant's recovery should be limited to those hours presented in the Motion, not on Reply or at the hearing.

Based on the above fee reductions, the Court finds that Defendant is entitled to recover the following fees:

| Phase of Litigation | Hours Requested | Fees Requested | Fee Awarded |
|---|---|---|---|
| *Rea* Action | 74.1 | $6,491.16 | $6,491.16 |
| This Action Excluding Motion to Dismiss Preparation | 24.5 | $5,365.50 | $5,365.50 |
| Motion to Dismiss Preparation | 21.9 | $4,796.10 | $3,117.46 |
| Motion for Attorney's Fees[4] | 34.6 | $7,577.40 | $7,577.40 |
| Total: | 155.1 | $24,230.16 | $22,551.52 |

---

[4] This is the amount evidenced in the invoices attached to the Motion and does not consider evidence attached to the Reply.

### III.     RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that George Gretsas's Verified Motion for Attorney's Fees (ECF No. 66) be **GRANTED, in part**, and **DENIED, in part**, and that Defendant be awarded a total of $22,551.52 in attorney's fees. The undersigned further recommends that Defendant's Motion be **DENIED, in part**, without prejudice to file a motion for attorney's fees incurred after filing of the instant Motion.

A party shall serve and file written objections, if any, to this Report and Recommendations with the K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida this 9th day of August, 2023.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE