**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:21-cv-21538-KMM

JAMES MCDONOUGH and
VANESSA MCDONOUGH,

      Plaintiffs,

v.

CITY OF HOMESTEAD, FLORIDA, *et al.*,

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATIONS</u>

**THIS CAUSE** is before the Court on Defendants City of Homestead ("City"), Chief of Homestead Police Alexander Rolle, Tom Mead, and Ricky Rivera's ("Defendants") Verified Motion for Attorney's Fees, Pursuant to 42 U.S.C. § 1988. (ECF No. 67). The matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, to take all necessary and proper action as required by law and/or to issue a Report and Recommendation on the Motion. (ECF No. 68). Plaintiffs James E. McDonough ("Mr. McDonough") and Vanessa Lynn McDonough ("Mrs. McDonough") filed a Response (ECF No. 70), to which Defendants filed a Reply (ECF No. 74). An Evidentiary Hearing on the Motion was held on August 4, 2023. With the benefit of oral argument and evidence admitted at the hearing, and upon consideration of the Motion, Response, Reply, and being otherwise duly advised in the premises, the undersigned respectfully **RECOMMENDS** that Defendants' Motion be **GRANTED, in part**, and **DENIED, in part**.

1

I.      **BACKGROUND**

This action's history begins with an earlier related action raising identical factual allegations by Mr. and Mrs. McDonough.  *See William Rea v. City of Homestead*, 1:21-cv-20488 (S.D. Fla. Feb. 4, 2021).  In *Rea*, Plaintiffs Mr. and Mrs. McDonough were joined by three other plaintiffs; Defendants are the same for both suits.

Defendants moved to dismiss the complaint and additionally requested severance for failing to meet the requirements of permissive joinder.  Upon the filing of Defendants' motions, the District Court, "[w]ithout expressing any views as to the Motions' merits," entered an order "afford[ing] Plaintiffs an opportunity to cure the purported pleading defects by granting Plaintiffs leave to file an amended complaint."  Plaintiffs Mr. and Mrs. McDonough responded by voluntarily dismissing their claims from that action and initiating the instant action.

On April 21, 2021, Plaintiffs filed the Amended Complaint upon initiating this action (ECF No. 1).  Plaintiffs alleged Defendants had violated Plaintiffs' civil rights, proof of which was discovered on flash drives in Defendant George Gretsas's office, who was then the City's manager.  Plaintiffs alleged that on the flash drives, Gretsas maintained dossiers on Plaintiffs with false, defamatory, and/or illegally obtained information concerning Plaintiffs, which he strategically deployed and disclosed to third parties.

Plaintiffs brought forth seven causes of actions, both state and federal.[1]  Plaintiffs' federal claims, Counts I–IV, included § 1983 claims and claims for violation of the DPPA.  Plaintiffs' state claims, Counts V–VII, included state constitutional claims and a state common law claim.

---

[1]  Violation of Civil Rights, 42 U.S.C. § 1983, by Mr. McDonough (Count I); Violation of Civil Rights, § 1983, by Mrs. McDonough (Count II); Violation of the Driver Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721 *et seq.*, by Mr. McDonough (Count III); Violation of the DPPA, §§ 2721 *et seq.*, by Mrs. McDonough (Count IV); Violation of Article I, Section 23, of the Florida Constitution (Count V); Violation of Article I, Section 12, of the Florida Constitution (Count VI); and Public Disclosure of Private Facts (Count VII).

Defendants again moved to dismiss on the basis that the Amended Complaint was a shotgun pleading, Plaintiffs' claims were all barred by res judicata, and the Amended Complaint failed to state a claim upon which relief may be granted.  The District Court granted Defendants' Motion to Dismiss Plaintiffs' Amended Complaint.  (ECF No. 44).  The District Court held that Plaintiffs' federal claims were barred under the doctrine of res judicata.  The Court also noted that Plaintiffs' § 1983 claims were impermissible shotgun pleadings.  Plaintiffs' federal law claims were dismissed with prejudice.  With only state law claims remaining, the District Court declined to exercise supplemental jurisdiction and dismissed the claims without prejudice.  Plaintiffs then filed a motion to reconsider the District Court's Order, which was opposed by Defendants (ECF Nos. 46, 47) and ultimately denied.  The Court's judgment on Defendants' Motion to Dismiss was affirmed on appeal.  (ECF No. 75).

Defendants moved for a determination of entitlement to attorney's fees under 42 U.S.C. § 1988.  The undersigned issued a Report and Recommendation on the matter, which the District Court subsequently adopted.  The Court held that Defendants were entitled to recover reasonable attorney's fees incurred in defending against Plaintiffs' federal claims.  This Court found that Defendants were the prevailing parties.  In assessing the frivolity of the claims, the Court found that Plaintiffs failed to make out a *prima facie* case for their federal claims.  The Court noted that it was clearly apparent that Plaintiffs' claims were barred by res judicata, which precluded Plaintiffs from establishing a *prima facie* case.  The Court also noted that the Parties conceded that neither side made an offer to settle nor made any attempts to settle and the case was dismissed prior to trial.  The Court further found that the claims did not warrant careful attention and review.  As such, the Court found Plaintiffs' federal claims were frivolous.  Regarding the state claims, the Court held that Defendants were not entitled to fees incurred in defending against Plaintiffs' state

claims because the District Court in declining to exercise supplemental jurisdiction declined to consider the merits of the claims.

Defendants City of Homestead, Alexander Rolle, Tom Mead, and Ricky Rivera now move for the entry of an award of reasonable attorney's fees incurred in this action and incurred in litigating attorney's fees.

## II.   DISCUSSION

In their Motion, Defendants sought an award of attorney's fees in the total amount of $41,037.33.  Defendants' Motion differentiates between the time counsel incurred in the initial *Rea* action and the time incurred in defending the claims herein; because the McDonoughs constituted two of the five Plaintiffs in the initial *Rea* suit, Defendants seek reimbursement of 2/5, or 40%, of their time incurred in that suit as representative of the portion of time expended on Plaintiffs' claims specifically.  In their Reply, Defendants revised their request for a total of $40,494.71, which is attributable to withdrawal of one time entry from their demand.  Defendants' demand also seeks reimbursement for fees incurred in prosecuting their Motion on entitlement to fees, and the instant Motion for an award of attorney's fees.[2]

In assessing the reasonableness of a request for attorney's fees, courts in the Eleventh Circuit apply the "lodestar" method to calculate an objective estimate of the value of an attorney's services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  Under the lodestar method, the value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"In determining what is a 'reasonable' hourly rate and what number of compensable hours

---

[2]  At the hearing held on this Motion, Defendants submitted additional invoices for fees incurred after filing the instant Motion.

is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 1350 n.2 (citing *Johnson*, 488 F.2d at 717–19).

The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303). Courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* at 428. When a request for attorney's fees is unreasonably high, courts may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut. *Bivins*, 548 F.3d at 1350; *see also Procaps S.A. v. Patheon Inc.*, No. 12-CV-24356, 2013 WL 6238647, at *17 (S.D. Fla. Dec. 3, 2013) (reducing a party's fee request with an across-the-board cut based upon billing inefficiencies). Although courts may apply either method, they cannot apply both. *Bivins*, 548 F.3d at 1351. Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.*

###### A.       Reasonable Hourly Rate

In computing the lodestar, the first step is to determine the reasonable hourly rate, defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The Supreme Court has explained that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). This Court is deemed an expert on the issue of hourly rates and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1301).

In this case, Defendants seek an award of attorney's fees for time incurred by attorneys Matthew H. Mandel, Anne R. Flanigan, Samuel I. Zeskind, Matthew J. Pearl, Eric L. Stettin, and Charles M. Garabedian, each at a rate of $217.06 per hour. In applying the *Johnson* factors, Defendants assert that the hours expended are reasonable given the nature of the case, the number of claims and defendants, and the length of the litigation.

Plaintiffs do not object to Defendants' hourly rate. In responding to the *Johnson* factors, Plaintiffs assert that they generally agree with Defendants' analysis, but dispute some of the factual allegations made. Plaintiffs assert that they do not agree that all of the time and labor expended were required to achieve the successful result or that all of the hours expended were reasonable.

In view of the factors from *Johnson v. Georgia Highway Express, Inc.*, the Court finds that the requested hourly rate is reasonable. The Court has considered the novelty and difficulty of the questions at issue; the skill requisite to perform the legal service properly; the customary fee; the

amount involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases.  This Court has also drawn on its expertise on the issue of hourly rates. *Loranger*, 10 F.3d at 781.

Defendants request an hourly rate of $217.06 for all attorneys involved in this matter.  This fee request is significantly lower than what has been awarded in other § 1983 cases.  *See Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1207 (N.D. Fla. 2019) (finding $900.00–$250.00 hourly rates for attorneys with 41–5 years of experience); *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, No. 15-60185-CIV, 2022 WL 18356156, at *4 (S.D. Fla. Oct. 21, 2022), *report and recommendation adopted*, No. 15-60185-CIV, 2022 WL 17728980 (S.D. Fla. Dec. 16, 2022) (awarding hourly rates of $375.00 for two attorneys with 16 and 22 years of experience, respectively; $450.00 for an attorney with 28 years of experience; and $500.00 for two attorneys with 36 years of experience); *Gartman v. Brady*, No. 2:18CV534-MHT, 2022 WL 4000349, at *6–8 (M.D. Ala. Sept. 1, 2022) (awarding a fee of $500.00 for an attorney with over 30 years of litigation experience and substantive § 1983 experience).  As such, the customary fee and awards in similar cases weigh in favor of finding the requested rate reasonable.

Regarding the experience, reputation, and ability of the attorneys, Attorney Matthew H. Mandel, has over twenty years of litigation experience, specifically in the field of federal civil rights litigation.  Mr. Mandel graduated from University of Miami Law School and has been a member of The Florida Bar since 1998.  Attorney Anne R. Flanigan is a seventh-year associate and practices federal civil rights litigation.  Ms. Flanigan graduated from Fordham Law School and has been a member of The Florida Bar since 2014.  Attorney Matthew J. Pearl serves as the City Attorney for the City of Homestead.  Mr. Pearl is a graduate of Washington College of Law at American University and has over fifteen years of experience practicing municipal law.  He has

been a member of The Florida Bar since 2005.  Attorney Eric L. Stettin has practiced municipal and commercial litigation for over thirty years.  Defendants assert that Mr. Stettin was the point of contact for the Homestead Defendants' insurance carrier and third-party administrator when the Initial Action was commenced.  Mr. Stettin has been a member of The Florida Bar since 1989. Attorney Samuel I. Zeskind graduated from St. Thomas University School of Law and has been practicing law for over fifteen years.  Mr. Zeskind is the lead counsel on the numerous public records request lawsuits filed by Plaintiff, James McDonough.  He has been a member of The Florida Bar since 2007.  Attorney Charles M. Garabedian is a fifth-year associate and former federal law clerk in the District Court for the Middle District of Florida.  He has been a member of The Florida Bar since 2017.  As the attorneys have a range of 30 years to 5 years of licensed experience, the attorney's experience weighs in favor of finding the requested rate reasonable.

And while Section 1983 cases are legally and factually complex and generally difficult to litigate, the legal and factual questions in this particular case were less so.  The case was dismissed at the motion-to-dismiss stage on res judicata grounds.  Plaintiffs represent there was no discovery in this matter before the adjudication of the motion to dismiss, and the record reflects that no other motions were filed before its adjudication.

But recognizing the successful result obtained at the motion to dismiss stage, noting the awards in other cases, considering counsel's experience, and drawing on the Court's own expertise on the issue of hourly rates, *see Loranger*, 10 F.3d at 781, the Court finds that an hourly rate of $217.06 is reasonable in this case.

**B.     Reasonable Number of Hours Worked**

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended in the litigation.  The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel*."  *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original).  The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award.  *Id.* at 428.  Counsel must have reliable evidence to support hours that are claimed.  *See Jean v. Nelson*, 863 F.2d 759, 772 (11th Cir. 1988).  If the fee applicant fails to exercise the required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.*

Defendants' Motion seeks attorney's fees in the amount of $40,494.71, incurred in the defense of Plaintiffs' federal, frivolous claims as well as the state, non-frivolous claims because Defendants argue that the state and federal claims are inextricably intertwined, including in the initial *Rea* action.  Plaintiffs argue, first, that Defendants should not be awarded any fees because Defendants failed to allocate which fees were incurred in defending against the frivolous claims versus the non-frivolous claims.   Second, Plaintiffs object to Defendants' entitlement to fees incurred in the *Rea* action because it was a separate lawsuit and Defendants should have moved for attorney's fees in that action.  Finally, Plaintiffs argue that Defendants are not entitled to fees incurred in litigating attorney's fees.  I address Plaintiffs' conceptual objections before turning to their specific objections to time entries.

### 1.    Fees Incurred for Frivolous and Non-frivolous Claims

Defendants' fee request does not distinguish between time incurred in defense of the frivolous federal claims as compared to Plaintiffs' dismissed state law claims.  Defendants argue that the total amount of their fees should be granted because the federal claims were inextricably intertwined with the state claims; the facts underlying § 1983 claims were incorporated into the facts justifying relief under the state claims.  Stated differently, the state claims alleged no facts not also alleged to form the basis of Plaintiff's federal claims.  Defendants contend that the frivolous and non-frivolous claims are inextricably intertwined because "Plaintiffs would not be in federal court (or even subject to Section 1988 fees), *but for* the frivolous federal claims."

Plaintiffs argue that, because Defendants are unable to separate the fees incurred on the frivolous claims versus non-frivolous claims, Defendants have not met their burden of establishing entitlement to any award.  And as such, Defendants' request for fees must be denied in its entirety.

Section 1988(b) provides in part that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Even though the statute does not distinguish between prevailing plaintiffs and prevailing defendants, the Supreme Court determined that two separate standards apply depending upon whether the plaintiffs or the defendants prevail.  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416–17 (1978); *Fox v. Vice*, 563 U.S. 826, 836 (2011); *K.M. v. Sch. Bd. of Lee Cnty., Fla.*, No. 2:02-CV-40-FTM-29DNF, 2006 WL 2506960, at *1 (M.D. Fla. Aug. 9, 2006), *report and recommendation adopted*, No. 2:02-CV-40-FTM-29DNF, 2006 WL 2506673 (M.D. Fla. Aug. 28, 2006).  Under Supreme Court precedent, a prevailing defendant may be awarded attorney's fees, at the discretion of the court, if the court finds that the plaintiff's lawsuit was frivolous, unreasonable, or without foundation.  *Hughes v. Rowe*, 449 U.S. 5, 14–15 (1980); *Christiansburg*

*Garment Co.*, 434 U.S. at 421; *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1188 (11th Cir. 1985); *Evans v. Monroe Cnty. Sheriff's Dept.*, 148 F. App'x. 902, 903 (11th Cir. 2005). Here, Defendants were found entitled to fees because Plaintiffs' federal claims were frivolous.

Upon finding a claim frivolous, a defendant is entitled to attorney's fees under § 1988 "incurred because of, but only because of, a frivolous claim." *Fox*, 563 U.S. at 836. "[I]f a frivolous claim occasioned the attorney's fees at issue, a court may decide that the defendant should not have to pay them. But if the defendant would have incurred those fees anyway, to defend against non-frivolous claims, then a court has no basis for transferring the expense to the plaintiff." *Id.* (emphasis omitted). "At the same time, the 'but-for' standard we require may in some cases allow compensation to a defendant for attorney work relating to both frivolous and non-frivolous claims." *Id.* at 837. "[T]he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation." *Id.* at 838. Notwithstanding my previous recommendation that Defendants should be awarded their fees incurred in defense of the federal, but not state, claims, I am persuaded by the evidence adduced in support of this Motion that with respect to certain tasks, Defendants' fees were incurred as a result of the frivolous claims, and would not have been otherwise incurred.

Beginning with the original Complaint filed in *William Rea v. City of Homestead*, 1:21-cv-20488-KMM (S.D. Fla. Feb. 4, 2021), Mr. and Mrs. McDonough solely alleged § 1983 and § 1985 claims against Defendants. After voluntarily severing their claims, Plaintiffs filed the Amended Complaint in this case that states, "This is an action to recover compensatory damages in excess of the jurisdictional limit of this Court for violations of 42 U.S.C. §1983 *et seq.* against Defendants for deprivation of rights, privileges and immunities secured by the federal and state Constitutions

as well as for supplemental claims." (ECF No. 1 at ¶ 1). At the hearing held on this Motion, Plaintiffs conceded that the facts from the original Complaint that related to Mr. and Mrs. McDonough in *Rea* were the same facts asserted in the Amended Complaint in this action.

Defendants have argued, convincingly, that the Amended Complaint takes the same facts that previously supported their federal claims in the *Rea* case and, in addition to repleading § 1983 claims, attempts to additionally advance a few supplemental claims based in state law—but that this pleading strategy by Plaintiffs does not change what was always essentially a suit based on the alleged federal constitutional violations. Moreover, all claims presented in the Amended Complaint were subject to the same successful res judicata and shotgun pleading deficiencies that were briefed by Defendants with respect to the federal claims. Under the circumstances, the evidence demonstrates that the fees were incurred as a result of the federal claims and counsel's failure to distinguish between the claims in their time records does not defeat the Court's ability to award a reasonable fee. *See, e.g.*, *Nunez v. City of Pompano Beach*, 20-62626-CIV, 2021 WL 5213089, at *5 (S.D. Fla. Oct. 25, 2021), *report and recommendation adopted*, 20-62626-CIV, 2021 WL 5206086 (S.D. Fla. Nov. 9, 2021) (recommending award for all fees incurred in defense of frivolous § 1983 claims with pendant state claim not found explicitly to be frivolous, but found barred by sovereign immunity, and as such, was "readily apparent that all four claims against [defendant] were frivolous").

Additionally, the Supreme Court noted in *Fox* that a defendant could be entitled to all fees incurred in a suit when "the frivolous claim enables removal of the case to federal court, which in turn drives up litigation expenses." *Fox*, 563 U.S. at 837. While this case was not removed to federal court, the Court's jurisdiction over this action derives from Plaintiffs' federal, frivolous claims. Plaintiffs' choice of federal forum due to this Court's jurisdiction over the federal,

frivolous claims caused "increased costs" in this case and further supports Defendants' entitlement to fees relating to both the frivolous and non-frivolous claims.  *See id.*

Having reviewed the time entries at issue and with the benefit of hearing testimony, I find that Plaintiffs' federal, frivolous claims were the but-for cause of defense counsel's time incurred in generally defending this action.

However, the work performed in relation to the Motion to Dismiss (and Reply) filed in this matter is demonstrably capable of being delineated between the claims.  Defendants' 20-page Motion to Dismiss presented arguments and advanced caselaw specific to the sufficiency of the state law claims.  In arguing that only three pages of the Motion were directed specifically to the merits of the state law claims, Defendants fail to acknowledge that the effort to research and draft those portions of the Motion was not incurred but for the federal claims.  At the hearing on this Motion, Defendants presented testimony from Matthew Mandel, Esq., who insisted that it was impossible to parse out time spent on state versus federal claims, though he also testified that the "lion's share" of the work went to the federal claims.  The Court cannot approximate what fees constitute the lion's share, and Defendants bore the burden of producing competent evidence to support their fee demand.

By contrast, counsel's efforts to oppose Plaintiffs' motion for reconsideration were exclusively necessitated by Plaintiffs' continued pursuit of their federal, frivolous claims as Plaintiffs' motion requested the Court to reconsider its dismissal with prejudice of the federal claims.  Accordingly, but for the federal, frivolous claims, Defendants would not have incurred fees in responding to Plaintiffs' motion for reconsideration and thus Defendants are entitled to those fees incurred.

   2.  **The *Rea* Case**

  Defendants also request fees incurred in the original action, *Rea*, in the amount of $15,663.04.  Defendants further represent that Defendants applied a 40% reduction to their fees incurred in the first lawsuit as Plaintiffs in this case comprised two of the five plaintiffs in *Rea*.

  Plaintiffs argue that Defendants are not entitled to fees incurred in *Rea* as it was a separate proceeding.  Plaintiffs assert that Defendants did not seek fees in the related action when it was timely and cannot seek to recoup those fees here.  Plaintiffs additionally object to Defendants' request for 40% of fees incurred in that action as illogical and unreasonable; Plaintiffs argue that the law does not permit such rough apportionment but if it did, Mr. and Mrs. McDonough would collectively represent a single plaintiff, or one-fourth of the original plaintiffs from *Rea*, because their claims traveled together.

  Defendants counter that they are entitled to fees in the *Rea* action as this case is a continuation of the Plaintiffs' vexatious conduct.

  In civil rights litigation, parties may be entitled to fees incurred in a separate proceeding, such as a prior administrative or state proceeding, where the work undertaken was "useful and of a type ordinarily necessary to advance the civil rights litigation."  *See Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985); *see Bartholomew v. Watson*, 665 F.2d 910, 914 (9th Cir. 1982) (finding work in a related state proceeding an "essential step" in presenting the plaintiff's § 1983 claim, and thus compensable); *Stathos v. Bowden*, 728 F.2d 15, 22 (1st Cir. 1984) ("The issues in the state suit were virtually the same as in the federal case.  Defendants appeared to have filed it in order to preempt the federal action.  And plaintiffs were forced to defend it lest they lose their § 1983 claim in the federal courts through collateral estoppel.  Defense of the state court action was a necessary part of plaintiffs' efforts to achieve their § 1983 goal.").

Here, counsel's efforts in the *Rea* action were not only useful and necessary to advance this action, but the relatedness of the two lawsuits cannot be overstated. The complaint in *Rea* was considered the original Complaint for this action by Plaintiffs and the appellate court alike. Plaintiffs appealed the District Court's dismissal of the federal claims with prejudice, arguing that they should have received an opportunity to cure the deficiencies found in the Amended Complaint. The Eleventh Circuit in affirming the District Court's dismissal noted that Plaintiffs had notice of the pleading deficiencies by the District Court's Order in *Rea*, which afforded "Plaintiffs an opportunity to cure the purported pleading defects by granting Plaintiffs leave to file an amended complaint." Following the District Court's Order, Mr. and Mrs. McDonough severed their claims and initiated this suit by filing the operative Complaint. That it was an amendment of their first complaint is plain from the pleading itself, which Plaintiffs labeled as the "Amended Complaint." (ECF No. 1). The Eleventh Circuit noted that Plaintiffs' naming of the operative Complaint in this action as an Amended Complaint supported that Plaintiffs were provided sufficient notice of their pleading deficiencies.

Defendants' efforts in *Rea* were useful and necessary to the outcome here, and would not have been incurred but for the frivolous, federal claims there alleged. Accordingly, I will include the time incurred in *Rea* in this recommendation.

Plaintiffs argue that Defendants should have sought fees in *Rea* when it was timely and cannot now seek to recoup those fees here. However, Plaintiffs' argument fails to appreciate that there was no final adjudication of Mr. and Mrs. McDonough's claims in *Rea* that would have triggered Defendants' ability to seek fees against them. While the plaintiff's case in *Rea* was ultimately dismissed with prejudice, this dismissal was not an adjudication of Mr. and Mrs.

McDonough's claims and, as such, Defendants could not seek fees from Plaintiffs for their frivolous claims.

Additionally, Defendants seek only 40% of their fees in the initial action because Plaintiffs herein comprised only two of the five plaintiffs in *Rea* originally.  The Court agrees with Plaintiffs, to the extent they argue the impropriety of applying such a rough estimate of the time attributable to defending *their* claims; but the Court understands the apportionment proposed by Defendants attributable not to the fees incurred by the McDonoughs's claims specifically but rather to the sheer number of persons liable for the judgment.  A per-plaintiff apportionment would not be necessary, as "joint and several liability applies in § 1983 damages actions." *Wright v. Watson*, No. 4:15-CV-34 (CDL), 2017 WL 4126981, at *2 (M.D. Ga. Sept. 18, 2017).  Nonetheless, the Court is not permitted to award parties more than they request and will recommend Defendants be awarded only 40% of the reasonable fees incurred in defending *Rea*.

### 3.     Fees-on-Fees

Defendants argue that they are entitled to compensation for fees incurred in prosecuting their Motion to Determine Entitlement to Attorney's Fees and for fees incurred in prosecuting the instant Motion for an award of attorney's fees.  Defendants' request of $40,494.71 includes their request for fees incurred in prosecuting their Motion on entitlement of attorney's fees.  Defendants additionally seek $11,764.65 in attorney's fees incurred after filing their Motion for Attorney's Fees, which Defendants requested at the hearing.

Plaintiffs argue that Defendants are not entitled to fees incurred seeking entitlement to attorney's fees because Defendants cannot parse which fees were incurred due to the federal or state claims.

16

"It is well-settled that fees-on-fees are permitted under § 1988 even though Congress did not explicitly provide for fees-on-fees therein." *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 799 (11th Cir. 2003) (citing *Hernandez v. Kalinowski*, 146 F.3d 196, 200 (3d Cir. 1998); *Jonas v. Stack*, 758 F.2d 567, 568 (11th Cir. 1985)).  "Like other courts, we have allowed parties to recover the cost of establishing their right to, and the amount of attorney's fees—the right to fees-on-fees." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010); *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980) ("[P]revailing plaintiffs under the Act are properly entitled to fee awards for time spent litigating their claim to fees.").  As the undersigned found Defendants are entitled to recoup their attorney's fees for both frivolous and non-frivolous claims as detailed above, Defendants are entitled to fees-on-fees as well under § 1988.

Defendants' Motion included invoices through September 30, 2022, which included time incurred in the motion for entitlement to fees.  At the hearing, Defendants advanced additional time records, not previously part of this Motion, for time incurred up through the present.  Plaintiffs' counsel objected at the hearing to the Court's consideration of evidence of bills that were not included in the Motion.  In fairness to Plaintiffs, Defendants' recovery should be limited to those hours presented in the Motion, not at the hearing.  However, Defendants should be permitted to file a motion to seek the fees incurred in litigating the instant Motion.

### 4.    Specific Time Entries

The Court has reviewed counsel's itemized time entries as invoiced for the time period of February 4, 2021, until September 30, 2022, to determine whether the number of hours expended was reasonable in light of the task performed.  I have also considered Plaintiffs' specific objections.[3]

---

[3] Plaintiffs' opposition attaches as an exhibit a copy of Defendants' time records with hand-written notations, which appear to calculate the sum of time attributable to certain tasks.  The exhibit provides this Court with no more

Having reviewed the time records and considering Plaintiffs' objections and Defendants' responses thereto, I have identified some entries that I do not include in this lodestar calculation. I do not, for example, include time spent on administrative and clerical tasks; budgeting; and participating in executive sessions. Fees incurred in these tasks are not recoverable. *Gonzalez v. Yoblendz Int'l, LLC*, No. 15-61678-CIV, 2016 WL 9225573, at *1 (S.D. Fla. June 20, 2016) ("It is well-established that clerical work such as coordinating schedules and housekeeping matters are not to be included in an attorney's fee award, even if an attorney conducted those tasks."); *see, e.g.*, (ECF No. 67-2 at 10, 13) ("Finalize Notice Of Appearance"); ("Attend To Scheduling Order"[4]). While the preparation of a litigation budget may be prudent it does not represent the provision of legal services. *See, e.g.*, (ECF No. 67-1 at 18) ("Attend To Budget Issues"). Similarly, Plaintiffs' objection to time incurred in pursuit of insurance coverage for the various individual defendants is well-placed. Though the City may have been contractually required to undertake these tasks, they were not part of the provision of legal services. Accordingly, I have not included in this recommendation time spent evaluating coverage, reviewing insurance policies, or engaged in telephone calls with persons I surmise from the diary entries were insurance agents or employees.[5]

Likewise, the Court deducted time supported by entries that do not provide sufficient detail to determine the reasonableness of the time expended because the entries are "too vague to

---

explanation of Plaintiffs' objections than the text of their Response, with one exception I will note: Plaintiffs circled an entry relating to drafting and researching state law and state claims for Defendants' Motion to Dismiss in the *Rea* action. *See* (ECF No. 70-1 at 5) ("Review and Analyze Relevant Florida State and Federal Case Law Concerning Issues Relating To Motion To Dismiss Re State Claims."). Defendants have withdrawn their request for this time. Nonetheless, it bears noting here that despite counsel's research into state law in relation to that motion to dismiss, the fact remains that no state law claims were there asserted.

[4] Remarkably, counsel billed thirty minutes of his time on this administrative task, and separately billed 0.2 hours on the same day for review and analysis of the court's mediation order. (ECF No. 67-2 at 13).

[5] The time entries give no basis for me to conclude that telephone conferences with Tammy Savage, Megan Carr, or Priscilla Thompson related to anything other than insurance coverage.

determine the necessity of the task." *Mendez v. Integrated Tech Grp., LLC*, No. 18-22059-CIV, 2020 WL 6826355, at *8 (S.D. Fla. Nov. 20, 2020); *see* (ECF No. 67-2 at 5) ("Attend To Pending Issues"); (*Id.* at 7) ("Attend to Various Issues"); (*Id.* at 17) ("Attend To Pending Issues"); (*Id.* at 21) ("Attend To Pending Issues"); (*Id.* at 22) ("Attend to Reply"); (*Id.* at 24) ("Attend To Pleadings"); (*Id.* at 29) ("Attend to Fees Issues"); (*Id.* at 43) ("Attend To Status").   The undersigned reduced Defendants' fee award by approximately 18 hours of entries too vague to award.

The Court has also considered time incurred by multiple attorneys performing duplicative work.  As Plaintiffs note, while a client may retain multiple attorneys, the Court may not award time incurred by multiple attorneys without determining the unique, nonduplicative work performed by each.  *Pena v. Facci of Merrick Park, Inc.*, No. 18-24296-CIV, 2020 WL 13390192, at *4 (S.D. Fla. Oct. 12, 2020).  I appreciate the inherit value that more than one lawyer brings to tasks like drafting and research, and the time records here enable me to see how different billers contributed to such tasks.  However, many of Defendants' time entries do not indicate the unique value performed by multiple attorneys performing the same task.[6]  A number of billing entries reflect time uniquely incurred *because* of the number of attorneys involved, such as time spent in conference or responding to each other.  Finally, when a new lawyer joins the team, it is not reasonable to shift the fees incurred in his review of work already performed.  *See, e.g.*, (ECF No. 67-2 at 29) (2.5 hours billed to review and analyze the pleadings and case in general by a new biller, 9 months into the case).  Accordingly, the undersigned reduced Defendants' fee award by approximately 70 hours of apparently duplicative billing.

---

[6] Multiple billers, for example, billed for "finalizing" the motion to dismiss.  (ECF No. 67-2 at 10).  Multiple attorneys billed for attending the scheduling conference.  (*Id.* at 11).  Each attorney billed for time to review each pleading and court order entered.

In addition, Defendants are not entitled to attorney's fees incurred that were not necessary in litigating the instant action, such as research for motions that were subsequently not filed.  *See* (ECF No. 67-1 at 25) ("Analyze Grounds For Pursuit Of Sanctions"); (*Id.* at 26) ("Analyze Issues Re Potential Sanctions; Prepare For Meeting With Client Re Litigation Status").  Defendants are not entitled to fees incurred for a possible motion for sanctions as it was not necessary in defending against the frivolous claims and moreover, no such motion was ever filed.  Similarly, time incurred in efforts to resolve the case after it was dismissed, potentially in avoiding an appeal, was not necessitated in defense of the claims; however, and over Plaintiffs' objection, time incurred in preparation of and attendance at the court-ordered mediation was required and compensable time.

Having reviewed the entirety of Defendants' billing records and other evidence advanced, a tabulation of the time included in this recommendation is attached as Exhibit A.  In sum, Defendants are entitled to an award of 40.36 (40% of 100.9) hours, or $8,760.54, from their time on *Rea*; and 42 hours, or $9,116.52, from the filing of the Amended Complaint in this action; for a total amount of **$17,877.06**.

## III.   RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Defendants' Verified Motion for Attorney's Fees, Pursuant to 42 U.S.C. § 1988 (ECF No. 67) be **GRANTED, in part**, and **DENIED, in part**, and that Defendants be awarded a total of **$17,877.06** in attorney's fees.  The undersigned further **RECOMMENDS** that Defendants' Motion be **DENIED, in part**, without prejudice to file a motion for attorney's fees incurred after filing of the instant Motion.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and

Recommendations.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

     **RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida this 11th day of August, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:    Honorable K. Michael Moore
      All Counsel of Record

**EXHIBIT A**

| Date | Biller | Hours | Rate | Fee-Requested |
|---|---|---|---|---|
| 2/4/2021 | MJP | 2.3 | $217.06 | $499.24 |
| 2/4/2021 | MHM | 1.0 | $217.06 | $217.06 |
| 2/4/2021 | MJP | 0.5 | $217.06 | $108.53 |
| 2/5/2021 | MJP | 2.0 | $217.06 | $434.12 |
| 2/5/2021 | MJP | 0.4 | $217.06 | $86.82 |
| 2/8/2021 | MJP | 1.4 | $217.06 | $303.88 |
| 2/11/2021 | ELS | 2.7 | $217.06 | $586.06 |
| 2/11/2021 | MJP | 0.8 | $217.06 | $173.65 |
| 2/15/2021 | ELS | 1.0 | $217.06 | $217.06 |
| 2/15/2021 | MJP | 1.8 | $217.06 | $390.71 |
| 2/8/2021 | MJP | 1.6 | $217.06 | $347.30 |
| 2/10/2021 | MJP | 1.3 | $217.06 | $282.18 |
| 2/10/2021 | MJP | 1.0 | $217.06 | $217.06 |
| 2/11/2021 | MJP | 1.2 | $217.06 | $260.47 |
| 2/12/2021 | MJP | 0.7 | $217.06 | $151.94 |
| 2/18/2021 | MJP | 1.3 | $217.06 | $282.18 |
| 2/19/2021 | MHM | 1.0 | $217.06 | $217.06 |
| 2/19/2021 | MJP | 1.5 | $217.06 | $325.59 |
| 2/22/2021 | SIZ | 3.3 | $217.06 | $716.30 |
| 2/22/2021 | MJP | 1.6 | $217.06 | $347.30 |
| 2/23/2021 | SIZ | 2.1 | $217.06 | $455.83 |

| 2/23/2021 | AKR | 1.0 | $217.06 | $217.06 |
|---|---|---|---|---|
| 2/23/2021 | AKR | 2.0 | $217.06 | $434.12 |
| 2/23/2021 | AKR | 2.0 | $217.06 | $434.12 |
| 2/23/2021 | MJP | 1.6 | $217.06 | $347.30 |
| 2/23/2021 | MJP | 0.8 | $217.06 | $173.65 |
| 2/25/2021 | SIZ | 1.0 | $217.06 | $217.06 |
| 2/25/2021 | MHM | 1.3 | $217.06 | $282.18 |
| 2/25/2021 | MJP | 0.8 | $217.06 | $173.65 |
| 2/25/2021 | MJP | 0.6 | $217.06 | $130.24 |
| 2/25/2021 | MJP | 0.2 | $217.06 | $43.41 |
| 2/26/2021 | AKR | 2.0 | $217.06 | $434.12 |
| 2/26/2021 | AKR | 2.0 | $217.06 | $434.12 |
| 2/26/2021 | SIZ | 1.1 | $217.06 | $238.77 |
| 2/26/2021 | MJP | 1.2 | $217.06 | $260.47 |
| 2/27/2021 | AKR | 5.0 | $217.06 | $1,085.30 |
| 2/28/2021 | AKR | 0.3 | $217.06 | $65.12 |
| 2/28/2021 | AKR | 2.0 | $217.06 | $434.12 |
| 2/28/2021 | AKR | 2.0 | $217.06 | $434.12 |
| 3/1/2021 | SIZ | 0.6 | $217.06 | $130.24 |
| 3/1/2021 | MJP | 0.8 | $217.06 | $173.65 |
| 3/4/2021 | AKR | 1.0 | $217.06 | $217.06 |
| 3/5/2021 | MJP | 1.0 | $217.06 | $217.06 |
| 3/8/2021 | AKR | 2.0 | $217.06 | $434.12 |
| 3/8/2021 | AKR | 1.5 | $217.06 | $325.59 |

| 3/8/2021 | AKR | 1.0 | $217.06 | $217.06 |
| 3/8/2021 | MJP | 0.3 | $217.06 | $65.12 |
| 3/8/2021 | MJP | 0.3 | $217.06 | $65.12 |
| 3/9/2021 | MHM | 0.7 | $217.06 | $151.94 |
| 3/9/2021 | MJP | 0.7 | $217.06 | $151.94 |
| 3/10/2021 | ELS | 1.5 | $217.06 | $325.59 |
| 3/12/2021 | AKR | 3.0 | $217.06 | $651.18 |
| 3/14/2021 | AKR | 3.5 | $217.06 | $759.71 |
| 3/16/2021 | MJP | 0.8 | $217.06 | $173.65 |
| 3/17/2021 | MHM | 2.0 | $217.06 | $434.12 |
| 3/18/2021 | MJP | 0.7 | $217.06 | $151.94 |
| 3/19/2021 | MJP | 0.8 | $217.06 | $173.65 |
| 3/22/2021 | MJP | 0.6 | $217.06 | $130.24 |
| 3/23/2021 | MJP | 0.7 | $217.06 | $151.94 |
| 3/24/2021 | MJP | 0.8 | $217.06 | $173.65 |
| 3/26/2021 | MJP | 0.6 | $217.06 | $130.24 |
| 3/29/2021 | AKR | 1.0 | $217.06 | $217.06 |
| 3/29/2021 | AKR | 2.0 | $217.06 | $434.12 |
| 3/29/2021 | AKR | 1.0 | $217.06 | $217.06 |
| 3/29/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 3/29/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 3/29/2021 | SIZ | 0.4 | $217.06 | $86.82 |
| 3/29/2021 | MHM | 2.0 | $217.06 | $434.12 |
| 3/30/2021 | AKR | 0.2 | $217.06 | $43.41 |

| 3/30/2021 | MHM | 1.0 | $217.06 | $217.06 |
| 3/31/2021 | AKR | 0.4 | $217.06 | $86.82 |
| 3/31/2021 | AKR | 1.6 | $217.06 | $347.30 |
| 4/6/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/6/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/7/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/7/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/7/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/8/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/8/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/8/2021 | MHM | 0.4 | $217.06 | $86.82 |
| 4/9/2021 | AKR | 0.4 | $217.06 | $86.82 |
| 4/9/2021 | MJP | 0.5 | $217.06 | $108.53 |
| 4/12/2021 | MHM | 0.5 | $217.06 | $108.53 |
| 4/12/2021 | AKR | 1.0 | $217.06 | $217.06 |
| 4/12/2021 | AKR | 1.0 | $217.06 | $217.06 |
| 4/13/2021 | AKR | 0.6 | $217.06 | $130.24 |
| 4/13/2021 | MHM | 0.5 | $217.06 | $108.53 |
| 4/14/2021 | MHM | 0.7 | $217.06 | $151.94 |
| 4/15/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/15/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/15/2021 | MHM | 0.7 | $217.06 | $151.94 |
| 4/19/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 4/19/2021 | MJP | 0.3 | $217.06 | $65.12 |

| | | | | |
|---|---|---|---|---|
| 4/22/2021 | MJP | 0.6 | $217.06 | $130.24 |
| 4/23/2021 | MJP | 0.6 | $217.06 | $130.24 |
| 5/6/2021 | MHM | 0.2 | $217.06 | $43.41 |
| 5/10/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 5/10/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 5/25/2021 | MJP | 0.6 | $217.06 | $130.24 |
| 6/4/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 6/4/2021 | MJP | 0.2 | $217.06 | $43.41 |
| 6/22/2021 | MHM | 0.2 | $217.06 | $43.41 |
| 6/30/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 6/30/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 6/30/2021 | MHM | 0.3 | $217.06 | $65.12 |
| 7/1/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 7/1/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 7/1/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 7/2/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 7/2/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 7/2/2021 | MHM | 0.2 | $217.06 | $43.41 |
| 7/5/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 7/6/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 7/6/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 7/12/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 8/12/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 8/17/2021 | AKR | 0.5 | $217.06 | $108.53 |

| | | | | |
|---|---|---|---|---|
| 8/17/2021 | AKR | 0.5 | $217.06 | $108.53 |
| 8/19/2021 | AKR | 0.2 | $217.06 | $43.41 |
| 9/3/2021 | MHM | 1.0 | $217.06 | $217.06 |
| 9/5/2021 | AKR | 1.0 | $217.06 | $217.06 |
| 9/5/2021 | AKR | 2.5 | $217.06 | $542.65 |
| 9/29/2021 | MHM | 1.0 | $217.06 | $217.06 |
| 9/29/2021 | AKR | 0.5 | $217.06 | $108.53 |
| 9/30/2021 | MHM | 1.2 | $217.06 | $260.47 |
| 9/30/2021 | MHM | 1.0 | $217.06 | $217.06 |
| 10/1/2021 | AKR | 0.5 | $217.06 | $108.53 |
| 10/1/2021 | AKR | 0.4 | $217.06 | $86.82 |
| 10/5/2021 | AKR | 1.0 | $217.06 | $217.06 |
| 10/5/2021 | AKR | 4.0 | $217.06 | $868.24 |
| 10/12/2021 | AKR | 0.5 | $217.06 | $108.53 |
| 10/19/2021 | MHM | 0.7 | $217.06 | $151.94 |
| 10/19/2021 | MHM | 0.5 | $217.06 | $108.53 |
| 10/25/2021 | MHM | 1.0 | $217.06 | $217.06 |
| 11/11/2021 | SIZ | 0.8 | $217.06 | $173.65 |
| 11/15/2021 | CMG | 1.7 | $217.06 | $369.00 |
| 11/15/2021 | CMG | 3.0 | $217.06 | $651.18 |
| 11/16/2021 | CMG | 0.5 | $217.06 | $108.53 |
| 11/17/2021 | CMG | 0.4 | $217.06 | $86.82 |
| 1/13/2022 | SIZ | 0.3 | $217.06 | $65.12 |
| 7/15/2022 | AKR | 0.6 | $217.06 | $130.24 |

| 7/15/2022 | MJP | 0.5 | $217.06 | $108.53 |
|-----------|-----|-----|---------|---------|
| 7/18/2022 | MHM | 0.5 | $217.06 | $108.53 |
| 7/19/2022 | AKR | 1.0 | $217.06 | $217.06 |
| 7/25/2022 | AKR | 0.4 | $217.06 | $86.82 |
| 7/29/2022 | AKR | 0.5 | $217.06 | $108.53 |
| 8/8/2022 | AKR | 1.0 | $217.06 | $217.06 |
| 8/8/2022 | AKR | 1.5 | $217.06 | $325.59 |
| 8/9/2022 | AKR | 3.0 | $217.06 | $651.18 |
| 8/10/2022 | MHM | 1.0 | $217.06 | $217.06 |
| 8/12/2022 | AKR | 0.4 | $217.06 | $86.82 |
| 9/29/2022 | AKR | 0.2 | $217.06 | $43.41 |
| 9/29/2022 | AKR | 0.3 | $217.06 | $65.12 |
| 9/29/2022 | MHM | 0.5 | $217.06 | $108.53 |